340 So.2d 661 (1976)
O. S. COOPER, Plaintiff-Appellant,
v.
CONAGRA, INC., Defendant-Appellee.
No. 13086.
Court of Appeal of Louisiana, Second Circuit.
December 6, 1976.
Rehearing Denied January 10, 1977.
*662 Baker, Culpepper & Brunson by Bobby L. Culpepper, Jonesboro, for plaintiff-appellant.
Waltman, Napper & Madden by O. L. Waltman, Jr., Ruston, for defendant-appellee.
Before BOLIN, HALL and MARVIN, JJ.
En Banc. Rehearing Denied January 10, 1977.
HALL, Judge.
Plaintiff, O. S. Cooper, filed suit against defendant, Conagra, Inc., for damages, alleging defendant breached a broiler feeding contract by failing to provide plaintiff with chickens to raise in accordance with the agreement. The trial court found that the contract was terminated by defendant in accordance with the terms of the contract prior to the alleged breach. Plaintiff appealed, contending the required notice of termination was not given by defendant. We affirm the trial court's judgment.
Plaintiff raised chickens for eight or nine years. He maintained two broiler houses, each with a capacity of about 14,000 chickens. For the first few years of his operation, plaintiff raised chickens for McGehee Poultry Company. That company sold its business to Conagra, Inc., defendant in this suit.
On April 25, 1972, plaintiff and defendant executed a "broiler feeding agreement", which generally required defendant to deliver baby chicks to plaintiff, together with supplies necessary to raise the chicks. Plaintiff was obligated to raise the chicks to maturity. The clause in controversy in this lawsuit provided:

*663 "The duration of this contract will cover a period of time sufficient to produce one flock of broiler chickens, but shall remain in effect thereafter, until cancelled by either party upon ten (10) days notice."
Early in 1973, Conagra, Inc. made the decision that all growers raising chicks for them should insulate their broiler houses. Plaintiff was advised that Conagra would place no broilers in uninsulated houses after August 15, 1973. Field representatives of defendant discussed this requirement with plaintiff on several occasions, as did Bill Gilley, defendant's production manager.
Plaintiff and his wife admitted being so advised, but testified they were told by Gilley that delivery of chicks would resume in April, 1974, despite the fact that plaintiff's houses were not insulated. Plaintiff testified he was led to believe an exception would be made for him due to his advanced age. Gilley testified he repeatedly told plaintiff that insulation was an absolute prerequisite to any further deliveries and denied telling plaintiff an exception would be made in his case. Gilley's testimony is supported by the following letter written by Gilley to plaintiff on January 25, 1974:
"In our discussion of January 17, 1974, you asked that I write you a letter explaining why I cannot place birds back on your farm. Beginning August 15, 1973, we have not placed and will not place any birds in houses that are not insulated.
"We feel like insulation will make you money along with making us money in fuel savings and feed conversion respectfully. (sic)
"If you insulate your houses to our specification, we will place birds on your farm. If I can be of further help to you, let me know."
Factually, we conclude, as did the trial judge, that defendant's representatives clearly advised plaintiff that he would receive no more chicks after August, 1973, unless and until he insulated his houses. Plaintiff was mistaken in his impression that an exception would be made in his case for the April, 1974 delivery.
Plaintiff contends the verbal and written notices given plaintiff were insufficient to terminate the contract, and that specific and unconditional notice of termination was necessary. The basic question is whether the above letter, which contains the essence of several verbal discussions between the parties, was merely an attempt to unilaterally modify the contract or whether that letter sufficiently informed plaintiff that the contractual relationship was terminated unless plaintiff insulated his houses.
Plaintiff relies on Scallan v. Mark Petroleum Corporation, 303 So.2d 498 (La. App. 2d Cir. 1974) writs denied 307 So.2d 370 (La.1975), which held that the defendant bears the burden of proving the termination of an agreement in the manner specified in the agreement. In Scallan, the agreement required written notice of termination and stipulated that no verbal evidence of termination would be admissible in any proceeding. Written notice was also required by the agreement under consideration in Crow v. Southern Natural Gas Company, 210 So.2d 596 (La.App. 2d Cir. 1968), writs denied 252 La. 834, 214 So.2d 160 (1968), also relied on by plaintiffs. In the instant case, no particular manner of termination is specified in the contract. Defendant must, however, prove that notice of termination was communicated to plaintiff. This notice must be sufficiently clear to apprise the other party of the action being taken. Atlantic Banana Company v. Standard Fruit & Steamship Company, 493 F.2d 555 (5th Cir. 1974).
The notice given by defendant was unequivocal in stating that the business relationship was terminated unless and until plaintiff insulated his houses: "Beginning August 15, 1973, we have not placed and will not place any birds in houses that are not insulated." This notice was given months before the date plaintiff testified he expected his birds to be delivered. Defendant's employees all testified that no exceptions were made to the policy. Even if doubt existed in plaintiff's mind prior to the receipt of the letter, the letter should have *664 removed that doubt. As in Tillman v. New Orleans Saints Football Club, 265 So.2d 284 (La.App. 4th Cir. 1972), written notice of the sort which plaintiff claims was necessary would have been a mere ceremony. The notice given by defendant was sufficient. Therefore, the contract terminated and defendant was under no obligation to deliver chicks in April, 1974.
Plaintiff correctly points out that one party cannot unilaterally modify the terms of a contract. However, in the instant case either party could terminate the contract upon giving ten days notice. Defendant's position throughout the conversations with plaintiff was that this right was being exercised unless and until plaintiff insulated his broiler houses. Defendant did not modify the contract. Instead, defendant terminated the contract. The fact that defendant offered to resume its contractual relationship with plaintiff if the latter insulated his houses does not alter the unequivocal communicated intent of defendant to terminate the relationship unless or until that was done.
For the reasons assigned, the judgment of the district court is affirmed at appellant's costs.
Affirmed.