467 So.2d 616 (1985)
Roy J. INGRAFFIA, Plaintiff-Appellant,
v.
Steve COLEMAN, as Curator for Elizabeth M. St. Germes, and Terminix International, Inc., Defendants-Appellees.
No. 84-209.
Court of Appeal of Louisiana, Third Circuit.
April 10, 1985.
Sessions, Fishman, Rosenson, Boiafontain & Nathan, Max Nathan, Jr. and Camilo K. Salas, III, New Orleans, for plaintiff-appellant.
William L. McLeod, Lake Charles, Mmahat & Duffy, Peter E. Duffy and Vallerie Oxner and John J. Brennan, III, Metairie, for defendants-appellees.
Before GUIDRY, LABORDE and YELVERTON, JJ.
GUIDRY, Judge.
This appeal emanates from the trial court's dismissal of plaintiff's action in quanti minoris. Plaintiff, Dr. Roy Ingraffia, sought a reduction in the purchase price of a house purchased from defendant, Steve Coleman.
The procedural history and facts of the case were correctly stated by the trial court in its written reasons for judgment. However, on appeal, plaintiff questions certain conclusions reached by the trial court based upon these facts. After setting forth the trial court's written reasons for *617 judgment, we will discuss the issues raised by plaintiff.
"Roy J. Ingraffia, a medical doctor, has brought this suit in quanti minoris seeking a refund of $13,804.44 from Steve Coleman because of termite damage he alleges existed in a house he purchased for $126,000. The residence is situated on State Street in the City of New Orleans. The sale took place in October, 1974, and suit was filed in 1975. The sale was actually made from Elizabeth M. St. Germes acting through her curator Steve Coleman. Ms. St. Germes has since died and Steve Coleman as her sole heir and legatee was named as defendant in an amended pleading. Initially the plaintiff named as a party defendant Terminix International, Inc., and later added Terminix Service Co., Inc. These two defendants were dismissed from the plaintiff's demands following a settlement with their insuror (sic), The Maryland, briefly named as a defendant, then also dismissed from the case. Both Terminix companies were named as Third Party Defendants by Steve Coleman and remain in the case in that capacity.
A stipulation entered into the record and a copy of a settlement agreement reflect that the plaintiff received $7,000 from The Maryland in settlement of his claims against the Terminix companies.
At the trial of the case, Plaintiff called as witnesses Steve Coleman, the defendant, on cross-examination and Vernon L. Sanchez, a termite expert. He also filed the depositions of Alfred Lyons, John Charbonnet and John Bailey. The plaintiff did not testify and in fact did not appear at the trial. There is thus no testimony from the plaintiff to establish what he knew or observed relative to termite infestation, prior to the completion of the sale.
The house in question is situated on State Street in the City of New Orleans and bears municipal number 1462. It was listed for sale by the defendant with Trade Mark Realty of New Orleans. Dr. Roy J. Ingraffia expressed an interest in the house and conducted negotiations through the real estate agency. There was one meeting between Steve Coleman and Dr. Ingraffia at the house at which time a contractor accompanied the plaintiff and inspected the premises. The contractor and the plaintiff conferred to one side out of Mr. Coleman's hearing. The precise date of this meeting and the identity of this contractor were not established. However, this meeting was prior to the execution of an agreement to buy and sell.
In April of 1974, Trade Mark Realty arranged to have John R. Bailey, a termite expert, inspect the house. This he did and thereafter reported to Sylvia Roy and John Coats of the realty company that the building had extensive termite damage and recommended that a qualified contractor make a determination of the extent of the damage. A meeting was then arranged at the house between Ms. Roy, Coats, Bailey, a carpenter whose name was Allison and Dr. Ingraffia. At this time, Allison made a further inspection and found that the place was literally riddled with termite damage. This meeting was on or after April 22, 1974.
An offer to purchase for the price of $127,500 was made by Dr. Ingraffia by a document dated April 21, 1974. (Exhibit P-7) Some exchanges then took place between the real estate agency and defendant's attorney, during the course of which mention was made that the plaintiff had discovered termite damage. An addendum to the April 21, 1974, document then executed by the plaintiff acknowledging (sic) that in consideration of a payment of $1,500 to repair termite damage discovered as a result of inspection, the purchaser would waive any rights to damages (under the termite clause) and this aspect of the contract would be fully satisfied. (Exhibit P-8 dated May 2, 1974) Thereafter an agreement to buy and sell the property for $126,000 was executed by both the plaintiff and the defendant, dated May 16, 1974. This contract did not contain a *618 termite clause. The actual sale was completed on October 1, 1974, in accordance with the terms of the May 16, 1974, agreement.
The house in question was substantially over 50 years old. Testimony from an expert witness called by the plaintiff, Vernon Sanchez, a licensed termite inspector in New Orleans, establishes that it is usual to find termite damage in a wooden house over 40 years old in New Orleans. Further that a person should expect to find hidden damage if some damage is visible.
Prior to executing the contract to purchase the property, the plaintiff met with two persons who had made inspections of the building. Bailey, a termite expert, had found extensive termite damage and recommended that a further survey be made to determine the extent of the damage. Allison, a carpenter found the place to be literally riddled with termite damage. With this information, the prospective purchaser had more than an indication of termite damage, he had positive information of extensive damage. This was not a situation involving hidden termite damage. Under circumstances which exist in this case, the plaintiff can hardly secure the benefit of Civil Code Articles 2541 et seq. providing for the reduction of the price.
The Court will render a judgment in favor of the defendant, Steve Coleman, and against the plaintiff Roy J. Ingraffia dismissing all claims of the latter, with prejudice, at his cost. The Third Party Demands of the defendant against Terminix International, Inc. and Terminix Service Co., Inc. become moot and are dismissed without prejudice...." (Emphasis added).
On appeal, plaintiff urges that the evidence presented at trial does not support the trial court's finding that plaintiff had positive information of the extensive termite damage in the home prior to the purchase. Plaintiff acknowledges that he knew of some termite damage prior to the sale, but argues that he did not know of all of the termite damage. The extent of the property damage caused by the termites could only be discovered by defacing the property, which, according to plaintiff, he was under no duty to do.
In Fraser v. Ameling, 277 So.2d 633 (La.1973), our Supreme Court, citing their prior decision of Pursell v. Kelly, 244 La. 323, 152 So.2d 36 (1963), stated:
"In Pursell v. Kelly, 244 La. 323, 152 So.2d 36 (1963), this court laid down the test to be applied when a reduction in the purchase price is sought as a result of damage caused by termites. Guided by Civil Code Article 2521, the court announced the following test: `The proper test to be applied to this case, we think, as in all other cases of this kind, is whether a reasonably prudent buyer acting under similar circumstances, would have discovered the presence of termite damage in the premises.' In that case Pursell had purchased a 40-year-old wood frame house with such defects as bowed and leaning outside walls, slanting and shaky upstairs room, sunken foundation, and sidewalks below grade from soil subsidence. As to the termite damage it was noted that `a superficial examination was sufficient to disclose that the building, and particularly the lower floor, was infested with termites, "in other words you could see that as you walked in and went on the side"'. Recovery was refused."
Civil Code Article 2521 provides:
"Apparent defects, that is, such as the buyer might have discovered by simple inspection, are not among the number of redhibitory vices."
In the Pursell case, the vendee argued that the extensive termite damage concealed in the structual walls was not an apparent defect discoverable by simple inspection within the meaning of Article 2521. The Pursell court, in rejecting this argument, observed:
"... This would be a correct statement of the law if the facts of this case showed that all termite damage had been concealed in the structual walls, for *619 then it could not have been discovered by simple inspection. But, in this case, some of the termite damage was unquestionably apparent and, this being so, it became plaintiffs' duty to make further investigation. Obviously, when the defect complained of is partially apparent, the buyer who nevertheless, purchases the thing without further investigation must be held to have waived his right to sue in quanti minoris." (Emphasis added).
In the instant case, the record clearly reveals that plaintiff knew of the existence of termite damage in the house prior to the sale. Plaintiff conducted negotiations with the vendor to have vendor pay plaintiff $1,500.00 to repair termite damage discovered prior to the sale. Clearly, the defect complained of by plaintiff was, at the very least, partially apparent. Hence, plaintiff waived his right to sue in quanti minoris.
For the above and foregoing reasons, the judgment of the trial court is affirmed at plaintiff's cost.
AFFIRMED.