545 So.2d 1222 (1989)
Melvin B. CAPLE, et ux., Plaintiffs-Appellees,
v.
Winnie Jiles Burgess GREEN, Ronnie Hennigan d/b/a Arkla Pest Control Company, et al., Defendants-Appellants.
No. 20539-CA.
Court of Appeal of Louisiana, Second Circuit.
June 14, 1989.
*1223 John B. Slattery, Jr., Springhill, for defendants-appellants.
Joel M. Sermons, Shreveport, for plaintiffs-appellees.
Before SEXTON, LINDSAY and HIGHTOWER, JJ.
SEXTON, Judge.
This appeal is by a pest control inspector and the seller of house who were found liable to the buyers for $3,180.00 based upon redhibition and breach of contract. We affirm.
The relevant facts are as follows. The plaintiffs, Mr. and Mrs. Melvin Caple, negotiated the purchase of a house and acreage from Winnie Jiles Burgess Green and her children. In 1985, the Caples and Greens entered into a contract to buy and sell the property. This contract required that a termite certificate be provided at the buyers' expense. The defendant, Ronnie Hennigan d/b/a Arkla Pest Control Company, was contacted by the local realtor who represented the buyers. Hennigan inspected the house and found "no active termites." He supplied a certificate to that effect to the realtor who deducted Mr. Hennigan's fee from the earnest money submitted to her. She then gave the plaintiffs a copy of the certificate.
Subsequent to the purchase, while Mr. Caple was attempting to run a gas line under the house, he discovered extensive termite damage to the house. He obtained an estimate of the cost to correct the damage. When informal demands against the defendants for payment of the damage were unsuccessful, the Caples filed suit. The trial court rendered judgment in the amount of $3,180 against both defendants. Both appeal the adverse judgment.
Mr. Hennigan argues that the trial court erred in finding him responsible for the damages due to his failure to inform plaintiffs of the prior termite damage. He argues that he believed that his role was to examine the house in question and to determine only if there was active termite infestation. Mr. Hennigan argues that plaintiffs never told him that they expected him to report on damage that had been caused by prior termite infestation. He therefore asserts that there was no meeting of the minds between the parties as to the task to *1224 be performed by him. Additionally, he argues that plaintiffs had knowledge of the past damage and made no contact with Mr. Hennigan prior to or after his inspection as to the findings. Because of this knowledge, Mr. Hennigan asserts that it was the plaintiffs' duty to hire an expert in construction and repair to obtain information as to the extent of the prior termite damage.
Secondly, appellant Hennigan argues that the trial court erred in finding that the plaintiffs had been damaged because the contract indicated that plaintiffs specifically agreed in the purchase agreement (with the Greens) to pay all costs of treatment or repair. He argues, therefore, that it would have made no difference if he (Ronnie Hennigan) had told the plaintiffs about the past termite damage prior to the sale because the plaintiffs had agreed to be responsible for all repairs anyway.
Winnie Jiles Burgess Green appeals arguing that the trial court erred in its finding that she was liable to the plaintiffs in redhibition based upon the termite damage as she asserts that she disclosed that hidden defect before the sale. She also argues that a simple inspection of the house revealed damage that placed a further duty of inspection on Mr. Caple which he neglected and by such neglect, he thereby assumed the risk of the more extensive damage.
The trial court granted judgment against Mr. Hennigan finding that "he failed to do what he was hired to do."
The testimony of Mr. Hennigan indicates that the certificate he issued stated "[n]o visible evidence of infestation from wood-destroying insects was observed." He testified further that when he inspected the house the first time, he saw some old termite damage under the house. Even though he saw the damage, he only reported that there was no visible evidence of active infestation as he believed his job was only to report active infestation. After his inspection, he discussed the old termite damage with Mrs. Green and testified that she said the house "had been treated before." He also testified that there had been some repair work done under the house, but "I didn't pay that much attention to how much."
Additionally, the testimony of Mr. Caple indicates that Mr. Hennigan returned to reinspect the house at a later time. He testified that when he questioned Mr. Hennigan relevant to whether or not he had seen other damage at the time he issued the first certificate, he said that Mr. Hennigan indicated that he had "seen damaged beams under the house and didn't know how many was the reason he wanted to come back and reinspect it to count them."
The trial judge reviewed the inspection report form and noted that part 8E was an unchecked box which read: "Visible evidence of previously treated infestation, which is now inactive, was observed. (Explain in Item 10)." The court noted that Mr. Hennigan's own testimony showed that he found old and inactive infestation during his inspection. The court thus determined that he was under a duty to report this infestation, and his failure to do so was a breach of his obligation.
We cannot find error in this conclusion by the trial court. We are likewise influenced in our determination by the termite certificate form. This is an extensive form which does contain a block 8E to allow notation of previous inactive infestation, as the trial court noted. More significantly, however, the form contains as block 8D a place to report visible damage and its location. Further, block 9 deals with "Damage observed above, if any." Block 9A, if checked, indicates the repairs will be done "by this company" while block 9B indicates that any necessary repairs will be done "by another company." Block 9C states that any damage will not be corrected "by this company," and the checking of this block recommends that the "damage be evaluated by qualified building expert and that needed repairs be made." The form thus clearly reflects duties beyond only reporting active infestation.
Additionally, the record reflects that the Caples paid cash for this residence, which was to be their retirement home, and that the cash price was not financed. The termite *1225 inspection occurred as a result of the Caples insistence and was not required by a financial institution for loan protection. It therefore seems unrealistic to conclude that Mr. Caple would intend that the certificate include only a report dealing with active infestation without a report of other damage, as he obviously requested the certificate in order to be secure in purchasing the house. Certainly, he relied on the certificate's thoroughness before he consummated the sale.
We are also influenced in our decision by Mr. Hennigan's actions in returning to the house to reinspect it. These actions indicate that he felt uneasy in failing to report the damage he discovered earlier. We are therefore in accord with the trial court that Mr. Hennigan breached his duty to properly report what he found to the Caples. The fact that he found old unrepaired damage and did not report that damage to Mr. Caple was a breach of his contract.
As we will subsequently discuss, the trial court found that Mrs. Green had advised Mr. Caple of previously repaired termite damage. The record supports this determination. Thus, it is not so much the fact that Mr. Hennigan failed to report inactive infestation (which he was arguably on notice of based on what he was told by Mrs. Green), but rather it was Mr. Hennigan's failure to accurately report what his inspection revealedold unrepaired damage. All Mr. Caple knew from what he was told by Mrs. Green and from Hennigan's report was that there was old repaired damage and there was no visible evidence of termites on the premises. Under these circumstances, Mr. Caple has no further duty to inspect, as we will discuss more thoroughly with respect to the liability of Mrs. Green.
Finally, Mr. Hennigan argues that the trial court erred in finding that the plaintiff had been damaged based upon the purchase agreement in which he argues the buyer agreed to pay for necessary termite treatment and repair.
Agreements legally entered into have the effect of law upon the parties thereto, and may be modified or abrogated by the mutual consent of the parties. Snedegar v. Noel Estate, Inc., 438 So.2d 677 (La.App. 2d Cir.1983), writ denied, 442 So.2d 459 (La.1983). One party cannot unilaterally modify terms of contracts. Cooper v. Conagra, Inc., 340 So.2d 661 (La. App. 2d Cir.1976).
In this case, the printed contract states that "seller agrees to furnish termite free inspection certificate from bonded exterminator or pay for necessary treatment and repair and furnish such certificate." However, the original terms of the contract were altered and the word "seller" was marked off and "buyer" placed in its stead. Mr. Caple testified that he was not aware of the change and did not consent to it at the time of the contract.
Elizabeth "Beth" Weaver, the real estate broker who handled the sale, was present when the documents were signed. She indicated that after the sale agreement was executed there were no alterations in the agreement. She indicated that the agreement read "buyer" in place of "seller" at the time the agreement was signed.
Susan Anderson Crowson, employed by Beth Weaver and Associates, testified that she filled out the agreement in front of the Caples and said that all the changes, including the one at issue, were made when the contract was filled out.
In finding that Mr. Caple did not agree to pay for all unknown defects, the trial court noted that "it would be ludicrous for a man to agree to pay for all unknown repairs and then why would he do that and send someone out and agree to pay for a termite certificate too." We cannot find manifest error in the trial court's factual conclusion in this regard. We agree that it is unlikely that Mr. Caple agreed to pay for all repairs due to termite infestation and at the same time hire a termite inspector to inspect the house. Secondly, a review of the contract indicates that other changes on the contract were initialed by Mr. Caple. The instant one dealing with the payment for repairs was not. The judgment will be affirmed with respect to Mr. Hennigan.
*1226 The Greens also appeal and argue that the trial court (1) erred in holding that the plaintiffs had a cause of action against Mrs. Green, (2) erred in failing to hold the plaintiffs to the proper burden of inspection, and (3) erred in failing to hold that the plaintiffs assumed the risk of extensive damage after being advised of previous infestation and damage by termites. Her arguments center around Louisiana jurisprudence which she argues provides two exceptions to the warranty of the seller for hidden defects and redhibitory vices. First of all, she argues that there is an exception when the seller discloses hidden defects to the purchaser prior to sale. She secondly argues that if a simple inspection reveals damage, the purchaser has a duty to further inspect and assumes the risk of more extensive damage by his failure to do so.
The trial court found the following with respect to Mrs. Green.
I believe ... that Mrs. Green was aware that some defect existed.... But I believe that she was aware that some damage had been done and was aware that the defect existed. But I believe that she told Mr. Caples [sic] that there had been termite damage in the past and that it was extensive and that repairs had been made.... [T]he defect existed at the time of the sale and I do find that Mr. Caple was made aware of the prior termite damage and was required by law to make more than a casual inspection of the premises and I think by hiring Mr. Hennigan that he did that and when Mr. Hennigan failed to report that to him that he became obligated....
Our interpretation of this opinion is that the trial court found that Mrs. Green informed Mr. Caple before the sale that there had been previous termite damage which had been repaired. The trial court also clearly found that a defect (prior unrepaired termite damage) existed at the time of the sale. It appears that the court also found that Mrs. Green was aware of that defect and failed to inform Mr. Caple thereof. However, the fact that Mrs. Green "was aware that some damage had been done and was aware that the defect existed" is not crucial to the resolution of Mrs. Green's liability. It is only necessary that the defect existed and was not apparent. LSA-C.C. Arts. 2520 and 2521. Because the trial court specifically found that Mr. Caple was not told of the existing unrepaired old damage, a latent defect exists which has not been declared. Thus, Mrs. Green may not rely on LSA-C.C. Art. 2522, which exempts declared defects from the redhibitory action.
The trial court therefore determined that there was an existing defect which was not apparent and of which the buyer, Mr. Caple, was not informed, and that any further duty Mr. Caple had to inspect the premises, which arose as a result of his knowledge of the old repaired damage, was fulfilled by hiring Mr. Hennigan. We cannot say that the trial court was clearly wrong in these factual determinations on this record.
Mrs. Green further contends that the trial court erred in its application of legal principles to the instant factual circumstances. The duty of the buyer to discover termite damage is "whether a reasonably prudent buyer acting under similar circumstances, would have discovered the presence of termite damage in the premises." Pursell v. Kelly, 244 La. 323, 152 So.2d 36, 41 (1963). If the defect is apparent and could have been discovered by simple inspection, plaintiff has a duty to make a further investigation. A failure to do so waives the right to sue in quanti minoris. LSA-C.C. Art. 2521; Pursell v. Kelly, supra.
Appellant cites Ingraffia v. Coleman, 467 So.2d 616 (La.App. 3rd Cir.1985), and Bonhagen v. Hooper, 195 So.2d 447 (La. App. 4th Cir.1967), writ refused, 250 La. 634, 197 So.2d 652 (1967), in support of her contentions. In Ingraffia both the termite expert and a carpenter who checked the premises before sale found extensive apparent damage. Moreover, the termite expert recommended that a further survey be conducted to determine the extent of the damage. Thus, by purchasing the property without having a further survey made, the plaintiff was held to have waived his right to sue in quanti minoris. There are obvious *1227 significant factual distinctions between Ingraffia and the instant case.
In Bonhagen, simple inspection revealed old damage and active infestation. Also, apparently, the plaintiff was aware of the existing termite damage because the sale was subject to the plaintiff's ability to termite-proof the property and make essential structural repairs (which had resulted from the termite damage) at a cost of less than $300. He took bids from four pest control organizations and accepted the bid of Southern Exterminating Company to complete the necessary work for $165. Several months after the act of sale passed, while painting the house, the plaintiff discovered extensive termite damage behind cracked weatherboards. This damage involved sills, joists, studs and subflooring. Plaintiff had repairs completed in the amount of $1,075 and left undone subflooring repairs estimated to cost $550.
The master entomologist for Southern Exterminating testified that he had crawled under the house during his inspection and had found old termite damage there and also found some damaged subflooring in doorsills. He likewise found active infestation but did not discover any structural damage associated with the current infestation, nor did he believe that the damage from the old infestation was serious enough to warrant repair. This testimony was basically confirmed by the termite inspector for another company who had also bid on the original repair of the residence prior to the sale.
The court of appeal held: "In this case the simple inspection did reveal some old damage and active infestation which would seem to impose an even greater duty of further inspection on the plaintiff Bonhagen." Bonhagen v. Hooper, supra at 450. The court also held that the extent of the termite damage could not have been found by any inspection short of defacing the house and concluded that the Pursell case required such action once simple inspection revealed the possibility of more extensive damage. Thus, the court of appeal rejected the claim against the defendant sellers and the exterminating company which the plaintiff had hired.
In the instant case, the termite inspector simply reported that he could not locate current infestation. However, he did find inactive damage which he did not report to his client. This seems to us to be a different circumstance than in Bonhagen where the purchaser was advised of both active infestation and existing, although old, damage. As we appreciate it, the holding of Bonhagen is that once a buyer is made aware of existing unrepaired termite damage, he has a duty of further inspection which requires him to hire construction experts to thoroughly examine the premises. Stated somewhat differently, Bonhagen makes knowledge of old unrepaired termite damage an apparent defect per LSA-C.C. Art. 2521.
While not necessarily endorsing that conclusion, we observe that the Bonhagen circumstances do not pertain to the instant case. In the instant case, Mr. Caple was only told of old damage that had been repaired. He fulfilled any duty he may have had to conduct a further inspection when he hired Mr. Hennigan. Moreover, there is significant jurisprudence (not involving houses) to the effect that a buyer has no duty to check a hidden defect that is reportedly repaired. Buck v. Adams, 446 So.2d 895 (La.App. 1st Cir.1984); Starwood v. Taylor, 434 So.2d 1236 (La.App. 1st Cir. 1983). See also A. Copeland Enterprises v. Harimaw, Inc., 528 So.2d 707 (La.App. 5th Cir.1988), writ denied, 531 So.2d 475 (La.1988).
Stated somewhat differently, Mrs. Green's contention is that her advice to Mr. Caple of old repaired damage amounted to a declaration of a latent defect in accordance with LSA-C.C. Art. 2522. We reject that contention because the purchaser was specifically advised that the previous damage had been repaired. Further, the purchaser hired an expert and that expert failed in his duty to accurately reveal the hidden defect his examination disclosed.
In summary, the trial court determined that Mr. Caple was only aware that the premise had sustained previous damage *1228 which had been repaired. However, there was current existing damage at the time of the sale which was not revealed to the purchaser. This defect was not apparent. Thus, the failure of the purchaser's termite expert to report old unrepaired damage which the expert found gives rise to liability on the part of the termite expert in contract and on the part of the seller in redhibition. The trial court judgment is affirmed at appellants' costs.
AFFIRMED.