704 So.2d 839 (1997)
Joan M. PERRIN
v.
Kenneth S. KUEHNE, Helen Adele Kuehne Evans, Ronald C. Kuehne, Mary Ann Kuehne Comarda, Diane Kuehne Guidry, Karen Kuehne Harrison, Eugene L. Kuehne, Jr., Michael S. Kuehne, Kim Kuehne Breaux, Harriet Kuehne Fry, Priscilla Mary Kuehne Heinz, Christopher M. Kuehne, Paul Kent Kuehne, Timothy John Kuehne, David E. Carter and David E. Carter Exterminating Company, Inc.
No. 97-CA-196.
Court of Appeal of Louisiana, Fifth Circuit.
December 10, 1997.
Writ Denied February 20, 1998.
Marshall G. Weaver, Brian B. Rippel, Lura Lisa Wall, Henican, James & Cleveland, Metairie, for Plaintiff/Appellant Joan M. Perrin.
Hans J. Liljeberg, Catherine I. Dehaven, Metairie, for Defendants/Appellees Kenneth Kuehne, et al.
Before BOWES, GRISBAUM and CANNELLA, JJ.
CANNELLA, Judge.
REVERSED AND REMANDED.
In a redhibition case involving a house, plaintiff, Joan Perrin (purchaser), appeals from a summary judgment granted in favor of defendants, the Kuehne family (sellers)[1]. We reverse and remand.
*840 Plaintiff purchased a house located at 829 Orion Street, Metairie, Louisiana on February 24, 1994, after receiving four reports on its termite condition. The sale was conditioned upon the house and oak trees being "free of termites." The first report on the termite condition of the house was a disclosure addendum to the listing agreement executed in November of 1993. The disclosure stated that there was no past or present termite activity. The second report, paid for by plaintiff, was issued by a home inspection company (Building Inspection Services, Inc.) who walked through the property. The inspector, William Springer, prepared a report indicating that the property was in reasonably good condition. It made reference to a concurrent termite inspection, but did not mention the results. However, the termite inspector who inspected the premises at the same time, Danny Cabellero, told plaintiff that there was termite activity present. None of the reports received prior to the sale involved inspection of hidden or inaccessible areas of the house.
Following notification of termite activity, the Kuehne family had the house inspected by David Carter Exterminating Co. (David Carter). Its report of January 12, 1994 indicated "visible evidence of active infestation of native subterranean termites." It also found "[T]ermite damage on door frames outside addition slab." Subsequently, the property was allegedly treated for the active termites. On February 18, 1994, David Carter presented a second report stating "Visible evidence due to past infestation was found. No activity visible." According to the petition, at the act of sale on February 24, 1994, the Kuehne family presented plaintiff with a Wood Destroying Insect Report certificate indicating the house to be free of active termites. Subsequently, plaintiff allegedly discovered both active termite infestation and hidden termite damage.
Plaintiff filed suit against the Kuehne family on February 17, 1995 and, in a supplemental petition, added as defendants, David Carter, Carter Exterminating Company, Inc. and its insurer, alleging negligent misrepresentation. In her petitions, plaintiff asserts that the purchase of the house was contingent upon the house and oak trees being "free of termites." She goes on to state, inter alia, that following the sale, she discovered "active termites in the rear portion of the house" and that, "[S]ubsequent renovation work revealed the presence of substantial hidden termite damage, as well as structural defects in the rear portion of the house. Further inspections have revealed extensive old and active damage due to termite infestation..."
On October 2, 1996, the Kuehne family filed a Motion for Summary Judgment, asserting that plaintiff was not entitled to redhibition because, before purchasing the house, she knew of the termite infestation and failed to conduct a thorough investigation. They attached the December 14, 1993 building inspection with its attachments, the January 12, 1994 report by the exterminator showing visible evidence of termite activity, the exterminator's February 18, 1997 report showing no activity and plaintiff's answers to interrogatories indicating that she knew of the activity in December of 1993. Plaintiff opposed the motion, attaching her affidavit that she is unable to get her exterminator, Terminex, to guarantee termite treatment because of a cracked slab in the rear of the house, the Terminex contract and the building inspection report with its attachments. The Kuehne family argued that, once she was placed on notice of the termite infestation, plaintiff had a duty to investigate thoroughly. Plaintiff argued that she was given a certificate at the Act of Sale showing that there was no longer any termite activity. Plaintiff argued that the Kuehne family was not entitled to a summary judgment since a condition of the sale was not met, i.e. that the house would be free from termite infestation. The Kuehne family then filed a Motion to Strike plaintiff's opposition because she had never pled that there was a cracked slab or other structural defects, which she was arguing in her opposition.
On December 6, 1996, a hearing on the Motion for Summary Judgment was held. In that hearing, plaintiff noted that she wanted to supplement her petition to be more specific about the "structural defects", although she noted that the Kuehne family had not *841 filed an exception of vagueness. The trial judge granted the Motion for Summary Judgment, finding that plaintiff had knowledge of the termite damage and infestation, but said that "[Y]ou can all fight about anything else about your structural damage at another date." In the judgment, dated December 11, 1996, the trial judge limited the dismissal of plaintiff's case to the allegations or claims about termite infestation and damage.
On appeal, plaintiff contends that the trial judge erred in granting the Motion for Summary Judgement because there are genuine issues of material fact in dispute and because multiple items of damages or theories of recovery still exist, arising from the facts of a single transaction.
La. C.C.P. art. 966, providing for summary judgment procedure, was amended in 1997 as follows:
A. (1) The plaintiff or defendant in the principal or any incidental action, with without supporting affidavits, may move for a summary judgment in his favor for all or part of the relief for which he has prayed. The plaintiff's motion may be made at any time after the answer has been filed. The defendant's motion may be made at any time.
(2) The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action, except those disallowed by Article 969. The procedure is favored and shall be construed to accomplish these ends.
B. The motion for summary judgment and supporting affidavits shall be served at least ten days before the time specified for the hearing. The adverse party may serve opposing affidavits prior to the date of the hearing. The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law.
C. (1) After adequate discovery or after a case is set for trial, a motion which shows that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law shall be granted.[2]
(2) The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.[3]
D. The court shall hear and render judgment on the motion for summary judgment within a reasonable time, but in any event judgment on the motion shall be rendered at least ten days prior to trial.
E. A summary judgment may be rendered dispositive of a particular issue, theory of recovery, cause of action, or defense, in favor of one or more parties, even though the granting of the summary judgment does not dispose of the entire case.[4]
First, plaintiff argues that the summary judgement was improperly granted because she took reasonable steps to investigate the problem and she relied on the representations of defendants that the termites were eradicated prior to the Act of Sale. Plaintiff *842 distinguishes the cases cited by the Kuehne family because they were decided after a trial on the merits, such as Amend v. McCabe, 95-0316 (La.12/1/95); 664 So.2d 1183 (La.1995), relied on by the Kuehne family in the trial court. Plaintiff cites Caple v. Green, 545 So.2d 1222 (La.App. 2nd Cir.1989) to illustrate how slightly different facts in each termite case result in different holdings and require a determination at trial regarding as to whether some notice of termite activity and damage is sufficient to shield the seller from the redhibitory action by the buyer.
The Kuehne family asserts that plaintiff waived any claims based on the existence of termites and termite damage because she went through with the sale. Thus, there was no hidden defects to give rise to an action in redhibition, citing Amend. Plaintiff responds that she did not waive her rights because she made reasonable efforts to investigate the condition of the property and relied on their representations that the property was termite free and without termite damage. Thus, the termites and termite damage found after the Act of Sale were "hidden" defects.
In Amend, the vendors brought an action for breach of contract after the buyers refused to purchase the home. The buyers refused to go through with the purchase because, two days before the sale, the sellers informed them that active termites had been found by the exterminator, but that the sellers had paid to have them exterminated. In order to appease the buyers, the sellers hired a civil engineer to look for structural damage. However, the engineer mistakenly did not examine the home for termite damage. Nonetheless, the buyers still refused to go to the Act of Sale and the sellers filed suit for breach of contract. The trial court found in favor of the sellers and the court of appeal reversed. The Louisiana Supreme Court reversed the court of appeal in its original decision and again on rehearing. The issue on rehearing was whether the sellers were obligated to inspect for termite damage once they discovered the termites. The court discussed both contract and redhibition law to determine whether the buyers had recourse. The court concluded that the sellers were not obligated under either the contract or real estate usages and practices to perform a structural inspection. The sellers' obligation was to provide the Wood Destroying Pest Inspection Report based upon a visual inspection and to treat any discovered damage, which they did.
In Caple v. Green, 545 So.2d 1222 (La.App. 2nd Cir.1989), the pest control inspector, who had been hired by the purchaser, and the seller of a house were found liable for termite damage. The inspector provided the buyers with a certificate stating that no active termites were found. He did not report existing damage from termites. After the sale, the buyers discovered extensive termite damage to the house. The Second Circuit Court of Appeal found the inspector liable because he had seen the damage but did not report it to the purchaser. The court found that the inspector breached his duty to report termite damage, as well as infestations, to the purchasers. The seller was found liable because the damage at issue was "hidden", although the seller had informed the buyers that the house had old repaired termite damage. The court concluded that the unrepaired damage was not discoverable by simple inspection and that the plaintiff fulfilled any obligation to further inspect when he hired the termite inspector.
The Civil Code articles on redhibition state as follows:
Art. 2520. Warranty against redhibitory defects
The seller warrants the buyer against redhibitory defects, or vices, in the thing sold.
A defect is redhibitory when it renders the thing useless, or its use so inconvenient that it must be presumed that a buyer would not have bought the thing had he known of the defect. The existence of such a defect gives a buyer the right to obtain rescission of the sale.
A defect is redhibitory also when, without rendering the thing totally useless, it diminishes its usefulness or its value so that it must be presumed that a buyer would still have bought it but for a lesser price. The existence of such a defect limits *843 the right of a buyer to a reduction of the price.
Art. 2521. Defects that are made known to the buyer or that are apparent
The seller owes no warranty for defects in the thing that were known to the buyer at the time of the sale, or for defects that should have been discovered by a reasonably prudent buyer of such things.
Art. 2475. Seller's obligations of delivery and warranty
The seller is bound to deliver the thing sold and to warrant to the buyer ownership and peaceful possession of, and the absence of hidden defects in, that thing. The seller also warrants that the thing sold is fit for its intended use.
In Amend v. McCabe, 664 So.2d at 1188-1189, the court stated:
Not all redhibitory vices or defects justify rescission of the sale or reduction of the price. Apparent defects, which the buyer can discover through a simple inspection, are excluded from the seller's legal warranty. La.Civ.Code art. 2521. To determine whether the defect is apparent, one must consider whether a reasonably prudent buyer, acting under similar circumstances, would discover it through a simple inspection of the property. A simple inspection is more than a casual observation; it is an examination of the article by the buyer with a view of ascertaining its soundness. Pursell v. Kelly, 244 La. 323, 152 So.2d 36, 41 (1963).

Whether termite damage should be apparent to the buyer of a home is a question of fact. Typically, when all of the termite damage is concealed within the home's structure (e.g., walls and floors) it is considered unapparent because it is not discoverable by a simple inspection. Pursell, supra, (discussing, with approval, Ruehmkorf v. McCartney, 121 So.2d 757 (La.App. 2d Cir.1960), and Foreman v. Jordan, 131 So.2d 796 (La.App. 3d Cir.1961)). See e.g., Abdelbaki v. University Presbyterian Church, 380 So.2d 35, 37 (La.1980); Fraser v. Ameling, 277 So.2d 633, 638 (La.1973). In such situations, there is no obligation on the part of the buyer to inspect further. Fraser, supra; Pursell, supra. On the other hand, when some of the termite damage is detectable by a simple inspection, the buyer has a duty to investigate further. If he chooses to purchase the home without further investigation, he waives the right to sue for redhibition or reduction based upon the termite damage. See, e.g., Pursell, supra; Ingraffia v. Coleman, 467 So.2d 616 (La.App. 3d Cir.1985); Bonhagen v. Hooper, 195 So.2d 447 (La.App. 4th Cir.1967), writ denied, 250 La. 634, 197 So.2d 652 (1967).
Thus, in redhibition or reduction actions based on the buyer's discovery of termite damage after the purchase of a home, the case often turns on whether the infestation or damage was partially apparent, and should have been noticed by the buyer during the simple inspection. This is a fact intensive inquiry which produces varying and unpredictable results from case to case. To avoid litigation under these legal standards, buyers and sellers routinely contract for the seller to produce, at his expense, a termite certificate showing that the home has been visually inspected in readily accessible areas, and that the extermination of any active termite infestation has been accomplished.
Such termite provisions are designed to protect both parties. By requiring a professional inspection the buyer satisfies his obligation to conduct a simple inspection, intending to avoid purchasing a home with active infestation and/or visible termite damage. At the same time, the seller's fears of being sued later for redhibition or reduction are alleviated. Since the inspection puts the buyer on notice of infestation and visible damage discoverable by simple inspection, he has no cause to complain about them in subsequent litigation. La. Civ.Code art. 2522 ...
Nevertheless, as in this case, if a routine termite inspection reveals active infestation of termites or evidence of termite damage in a readily accessible area, the parties still may not know if there is more extensive hidden damage to the structure of the home. Thus, the primary issue presented in this case is whether the parties agreed that under these circumstances, *844 the seller was obligated to inspect the home for structural damage caused by termites. [Emphasis added]
In this case, plaintiff investigated the termite condition of the house. Termites and minor damage to the outside boards were discovered. The house was then treated and the termites exterminated. The house was sold with the warranty that the house was free from termites and termite damage. Plaintiff here, fulfilled her obligation to examine "the article ... with a view of ascertaining its soundness." This case is analogous to the situation cited in Amend:
"Typically, when all of the termite damage is concealed within the home's structure (e.g., walls and floors) it is considered unapparent because it is not discoverable by a simple inspection."
The termite activity and damage in this case were not apparent because neither were discoverable by a simple inspection. Otherwise, the termite inspector would have found it. See: Caple v. Green, 545 So.2d at 1226,1228. As noted in Caple, "... there is significant jurisprudence (not involving houses) that a buyer has no duty to check a hidden defect that is reportedly repaired." Caple v. Green, 545 So.2d at 1227. Consequently, we find that plaintiff did not waive her right to a redhibition or negligent misrepresentation action. Further, the issue of whether plaintiff knew or should have known about the hidden damage and activity based on the information she had at the time of the sale is a question of fact to be determined after a trial on the merits. Since plaintiff produced "factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial", the trial judge erred in granting the summary judgment. La.C.C.P. art. 966, as amended by Act 483, Sec. 1, August 15, 1997.
Accordingly, the judgment of the trial court is hereby reversed. The case is remanded for further proceedings. Costs of appeal are assessed against the Kuehne family.
REVERSED AND REMANDED.
NOTES
[1] The Kuehne family is Kenneth S. Kuehne, Helen Adele Kuehne Evans, Ronald C. Kuehne, Mary Ann Kuehne Comarda, Diana Kuehne Guidry, Karen Kuehne Harrison, Eugene L. Kuehne, Jr., Michael S. Kuehne, Kim Kuehne Breaux, Harriet Kuehne Fry, Priscilla Mary Kuehne Heinz, Paul Kent Kuehne, Christopher M. Kuehne and Timothy John Kuehne.
[2] Added by 1997 Act 483, Sec. 1, effective August 15, 1997. The last part of the sentence in the prior paragraph C was repealed. It stated: "... against an adverse party who fails to make a showing sufficient to establish the existence of proof of an element essential to his claim, action, or defense and on which he will bear the burden of proof at trial."
[3] Id.
[4] The 1997 amendment repealed the part of the sentence that stated: "... on the issue of liability alone although there is a genuine issue as to the amount of damages." 1997 Act 483, Sec. 1, effective August 15, 1997. It added the remainder of the paragraph.