916 So.2d 214 (2005)
Joseph Wade DAVID, Jr. and Pamela Lauren Teer David
v.
Concepcion St. Romain THIBODEAUX, Morris Bergeron, Scott's Plumbing, Matthew C. Bondy, Stuart W. Wooddy d/b/a False River Realty, and Terminix International Company, LP
No. 2004 CA 0976.
Court of Appeal of Louisiana, First Circuit.
May 11, 2005.
*216 Dan Schaneville, Baton Rouge, Counsel for Plaintiffs/Appellees Joseph Wade David, Jr. and Pamela Lauren Teer David.
Michael Parks, New Roads, Counsel for Defendant/Appellant Concepcion St. Romain Thibodaux.
Michael Bienvenu, Baton Rouge, Counsel for Defendant/Appellee Matthew Bondy, Stuart Woods d/b/a False River Realty.
Francis A. Smith, Jr., New Roads, Counsel for Defendant/Appellee Morris P. Bergeron.
C. Jerome D'Aquila, New Roads, Counsel for Defendants/Appellees James Scott and Morris Bergeron.
Before: GUIDRY, GAIDRY, and McCLENDON, JJ.
GUIDRY, J.
In this redhibition action, defendant, Concepcion St. Romain Thibodeaux, appeals the trial court's judgment, ordering *217 rescission of the April 26, 2000 Act of Sale of certain immovable property to plaintiffs, Joseph and Pamela David. For the following reasons, we reverse.

FACTS AND PROCEDURAL HISTORY
On April 26, 2000, Joseph and Pamela David purchased immovable property, including a single-family residence, in Lakeland, Louisiana from Mrs. Thibodeaux for the purchase price of $175,000.00. According to the Act of Sale, Joseph David paid $125,000.00 in cash, and executed a promissory note in favor of Mrs. Thibodeaux for the remaining $50,000.00. Prior to the sale, the Davids conducted several visual inspections of the premises. Additionally, a wood destroying insect report (WDIR) and a property condition disclosure statement were obtained. The property condition disclosure statement indicated that termite damage was discovered and repaired in 1990. Further, according to the WDIR, old termite damage and/or scars were discovered in three locations of the home. However, Mrs. Thibodeaux showed the Davids the three locations and explained that the termite problem had been taken care of and the damages had been repaired.
After moving into the home, the Davids discovered extensive active termite infestation and damage. Thereafter, the Davids filed a petition to rescind the sale and for damages, and in the alternative, for a reduction in the purchase price. Following a trial held on February 4, 5, 7, and 28, 2003, the trial court rendered judgment on May 13, 2003, ordering rescission of the Act of Sale. Mrs. Thibodeaux appeals from this judgment.

DISCUSSION
Generally, the seller of a home impliedly warrants to the buyer that it is free from redhibitory vices or defects. La. C.C. art. 2520. A defect is redhibitory, entitling the buyer to rescind the sale, when it renders the home useless, or makes its use so inconvenient that it must be presumed that the buyer would not have bought the home had he known of the defect. La. C.C. arts. 2520. A defect is also redhibitory, entitling the buyer to reduction of the price, when, without rendering the home totally useless, it diminishes its usefulness or its value so that it must be presumed that a buyer would still have bought it but for a lesser price. La. C.C. art. 2520.
However, not all redhibitory vices or defects justify rescission or reduction of the price. Apparent defects, which the buyer can discover through a simple inspection, are excluded from the seller's legal warranty. La. C.C. art. 2521. A defect is apparent if a reasonably prudent buyer, acting under similar circumstances, would discover it through a simple inspection of the property. A simple inspection is more than a casual observation; it is an examination of the article by the buyer with a view of ascertaining its soundness. Amend v. McCabe, 95-0316, p. 9 (La.12/1/95), 664 So.2d 1183, 1188. Factors considered in determining whether an inspection is reasonable include the knowledge and expertise of the buyer, the opportunity for inspection, and assurances made by the seller. Crow v. Laurie, 98-0648, p. 6 (La.App. 1st Cir.2/19/99), 729 So.2d 703, 707-708.
Whether termite damage is apparent to the buyer of a home by reasonable inspection is a question of fact. See McMorris v. Marcotte Builders, L.L.C., 98-2302, p. 6 (La.App. 1st Cir.12/28/99), 756 So.2d 424, 428, writ denied, 00-0664 (La.4/20/00), 760 So.2d 1158. Typically, when all of the termite damage is concealed within the home's structure (e.g., *218 walls and floors) it is considered unapparent because it is not discoverable by a simple inspection. Amend, 95-0316 at p. 10, 664 So.2d at 1188. In such situations, there is no obligation on the part of the buyer to inspect further. On the other hand, when some of the termite damage is detectable by a simple inspection, the buyer has a duty to investigate further. If he chooses to purchase the home without further investigation, he waives the right to sue for rescission or reduction based upon the termite damage. Amend, 95-0316 at p. 10, 664 So.2d at 1188. However, if the seller represents that suspected defects have been corrected, and simple inspection establishes these representations to be accurate, the buyer need not investigate further. Estopinal v. Bourshie, 420 So.2d 749, 751-752 (La.App. 4th Cir.1982); see also Caple v. Green, 545 So.2d 1222, 1227 (La.App. 2nd Cir.1989) and Perrin v. Kuehne, 97-196, p. 10 (La.App. 5th Cir.12/10/97), 704 So.2d 839, 844, writ denied, 98-0022 (La.2/20/98), 709 So.2d 786.
In the instant case, the Davids made at least four visual inspections of the home. According to the Davids, Mrs. Thibodeaux was present during each inspection, and controlled their access/view of the home. Additionally, Morris Bergeron performed a professional inspection on April 14, 2000. According to the Davids, nothing from their inspection or from Mr. Bergeron's report caused any alarm, and all the notations made by Mr. Bergeron appeared to be "cosmetic."[1]
Additionally, on April 14, 2000, Joseph David reviewed a copy of the WDIR, which noted three locations where old termite damage and/or scars were discovered. Mr. David testified that he asked Mrs. Thibodeaux for further explanation of the notations on the WDIR. Mrs. Thibodeaux brought him to all three areas listed on the WDIR and told him that the termites and damage had been taken care of and that it was not a problem any more, the spots being just old scars.[2] Further, the property condition disclosure statement received by the Davids indicated that termite damage was discovered and repaired in 1990. Mr. David testified that based on his visual inspection, the WDIR prepared by Terminix, Mr. Bergeron's report, and the assurances made by Mrs. Thibodeaux, he felt satisfied that there was old damage that had been repaired, and that he did not see anything to suggest that there was still a problem.
According to the Davids' testimony, it was not until the outside, wooden deck collapsed in July 2000 and Mrs. David's hand went through the basement wall while moving boxes in August 2000 that they suspected something was wrong. In September 2000, the Davids hired Gary Morris to perform a structural inspection of the home, at which time some of the walls and flooring were removed, revealing hidden, active termite infestation and damage. Additionally, the Davids hired Louis Faxon, an architect, who inspected the home twice. According to Mr. Faxon, evidence of termite damage had been covered up. Both experts testified that some damage was initially observable, but that did not mean a layperson buying a home would recognize it as a problem like a *219 home inspector or architect would. From our review of the entire record, we cannot find that the trial court manifestly erred or was clearly wrong in determining that the active termites and termite damage were a latent defect.
Mrs. Thibodeaux, however, also asserts that according to La. C.C. art. 2531, she is only bound to repair, remedy, or correct the defect; therefore, the trial court erred in ordering rescission of the sale. Louisiana Civil Code article 2522 provides that a buyer must give the seller notice of the existence of a redhibitory defect within sufficient time to allow the seller the opportunity to make the required repairs. "A buyer who fails to give that notice suffers diminution of the warranty to the extent the seller can show that the defect could have been repaired." However, this notice is not required when the seller has actual knowledge of the existence of a redhibitory defect. La. C.C. art. 2522. Additionally, La. C.C. art. 2531 provides, in part, that "[a] seller who did not know that the thing he sold had a defect is only bound to repair, remedy, or correct the defect. If he is unable or fails so to do, he is then bound to return the price to the buyer." Together, these codal provisions state that the right to an opportunity to repair is a condition precedent to rescission if the seller is in good faith. See Jordan v. LeBlanc and Broussard Ford. Inc., 332 So.2d 534, 538 (La.App. 3rd Cir. 1976). The buyer has the burden of establishing that the seller was given the opportunity to repair the defect. Pratt v. Himel Marine, Inc., 01-1832 (La.App. 1st Cir.6/21/02), 823 So.2d 394, writ denied, 02-2128 (La.11/1/02), 828 So.2d 571. If the buyer fails to establish that he gave notice of the defect to the seller, he is not entitled to rescission of the sale. However, such failure to give notice does not preclude the buyer from obtaining reduction of the price. See Coleman Oldsmobile, Inc. v. Newman and Associates, Inc., 477 So.2d 1155, 1160 (La.App. 1st Cir.1985), writ denied, 481 So.2d 1334 (La.1986); see also Dunn v. Pauratore, 387 So.2d 1227 (La. App. 1st Cir.1980) and Coffin v. Laborde, 393 So.2d 915 (La.App. 4th Cir.), writ denied, 396 So.2d 915 (La.1981) (finding that notice and an opportunity to repair are not prerequisites to maintain a suit in quanti minoris).
In the instant case, the trial court specifically found that Mrs. Thibodeaux did not have actual knowledge and was not in bad faith. Therefore, in order to obtain rescission of the sale, the Davids had to show that they notified Mrs. Thibodeaux of the redhibitory defect, thereby affording her an opportunity to repair it. From our review of the record, we do not find any evidence that the Davids gave Mrs. Thibodeaux notice of the existence of the redhibitory defect.[3] Rather, the Davids elected to file suit, seeking rescission, or alternatively, reduction of the purchase price on the basis that Mrs. Thibodeaux had actual knowledge. Therefore, because the Davids did not establish that they notified Mrs. Thibodeaux of the redhibitory defect, the trial court erred in awarding rescission of the sale.[4]
*220 However, as stated above, failure to give notice does not preclude the buyer from obtaining reduction of the purchase price. In an action for reduction of the purchase price, the amount to be awarded is the difference between the sale price and the price that a reasonable buyer would have paid if he had known of the defect. In the case of immovable property, the amount to be awarded is the amount necessary to convert the unsound structure into a sound one. A principle element in formulating a reduction of the purchase price is the cost of repairs. Lemonier v. Coco, 237 La. 760, 765-66, 112 So.2d 436, 438-39 (La.1959); Sanders v. Earnest, 34,656, p. 29 (La.App. 2nd Cir.7/24/01), 793 So.2d 393, 409; see also Lemoine v. Hebert, 395 So.2d 353 (La.App. 1st Cir.1980).
At trial of this matter, the testimony of three experts was introduced. The Davids introduced the testimony of Garry Morris, who performed a structural inspection of the home, and Louis Faxon. The trial court specifically found Mr. Morris's testimony not to be credible and also found that his estimated repair costs were extraordinarily high. Additionally, the trial court specifically found that the standards set by Mr. Faxon were very high, in that he thought the only way to remedy the defects was to tear the house down and start over, and that his estimate for repair costs was also high. Mrs. Thibodeaux introduced the testimony of Kenneth Jones. Mr. Jones inspected the home and testified that he prepared an estimate of repairs in the amount of $25,622.00. Mr. Jones stated that this amount estimated the cost to repair the existing damage, and included mark ups to take into account contingencies, such as undiscovered damage. The trial court considered Mr. Jones's repair estimate to be realistic and we agree. As such, we grant the Davids a reduction in the purchase price, in the amount of $25,622.00, subject to a credit of $24,000.00 in favor of Mrs. Thibodeaux for the award arising from the arbitration with Terminix.

CONCLUSION
For the foregoing reasons, the judgment of the trial court, ordering rescission of the sale, return of the purchase price, and cancellation of the promissory note is reversed. We grant the Davids a reduction in the purchase price, in the amount of $25,622.00, subject to a credit of $24,000.00 in favor of Mrs. Thibodeaux for the award arising from the arbitration with Terminix, for a net judgment of $1,622.00, together with legal interest. All costs of this appeal are to be borne equally, one-half assessed to Concepcion St. Romain Thibodeaux, and one-half assessed to Joseph and Pamela David.
REVERSED AND RENDERED.
McCLENDON, J., concurs and assigns reasons.
McCLENDON, J., concurs.
The majority's analysis is premised on the seller's lack of knowledge of active termite infestations. I respectfully disagree with that interpretation of the trial court's finding, and concur in the result.
In oral reasons, the trial court specifically found, as follows: "she did fail to disclose some things that had the Davids known, they would not have made the purchase of this home." The trial court further stated: "[i]t may have slipped her *221 mind, whatever ... she didn't strike me as being the type of person that would be evil or dishonest." Thus, the trial court did not find that she did not know, but rather that she "may" have forgotten, or that she did not have evil intentions in not revealing the infestations. In a footnote, the majority also seems to admit that Mrs. Thibodeaux had some knowledge, but she either assumed that the active termite problem was eliminated, or she "hoped" it was. Although she may have thought Terminix remedied the post 1990 problems, a seller with knowledge is not relieved of the duty to disclose active termite infestations based on hopes that the problem may have been eliminated. In addition, as documentary proof of knowledge, the record contains post 1990 reports of active infestations signed for by the seller, Mrs. Thibodeaux. While rescission is the usual remedy under such circumstances, facts peculiar to this case require a reduction in price.
If a buyer would have been willing to buy at a lesser price, the remedy is a reduction in price under Louisiana Civil Code article 2520. In the purchase agreement, both Mrs. Thibodeaux and the Davids agreed that if active termite infestation was found, the seller would provide treatment at her expense. Although the purchase agreement does not control the issue before this court, and the seller failed to advise the buyers of the active infestations, the agreement provides insight into what the buyers were willing to accept if the active termite problems had been revealed. More importantly, Louisiana Civil Code article 2532 charged the buyers seeking return with being prudent administrators, and thus, subject to a return of the thing, the house and property, in the same or like condition. However, in this case, the buyers made significant changes to the property, including removal of a pool, pool house, deck, and fence, and breached their fiduciary duty by allowing the house to deteriorate while in their care. For these reasons, the Davids must bear responsibility for their acts that damaged the property, and the just remedy is a reduction in price. See delaVergne v. delaVergne, 514 So.2d 186, 192 (La.App. 4 Cir.1987), writ denied, 519 So.2d 118 (La.1988).
NOTES
[1] Mr. Bergeron's report was not introduced into evidence at the trial.
[2] These representations were apparently not considered material misrepresentations, as the trial court specifically found that Mrs. Thibodeaux did not have actual knowledge of active termite infestation and was not in bad faith. Rather, the trial court indicated that Mrs. Thibodeaux operated under the assumption and/or hoped that the termites and damage had in fact been taken care of pursuant to her contract with Terminix.
[3] The Davids seem to assert on appeal that Mrs. Thibodeaux's posture in the litigation constituted a failure on her part to repair the redhibitory defect. However, the codal provisions cited above and jurisprudence suggest that notice must be given before rescission is sought, in other words, before suit is filed. Further, at the point when litigation has ensued, the seller no longer has a realistic opportunity to repair without the possibility of admitting liability or undermining his defense. As such, we find the Davids' assertion in this regard to be totally without merit.
[4] According the trial transcript, the trial court recognized the relevance of La. C.C. art. 2531 and at the conclusion of trial, took the matter under advisement to allow the parties to submit briefs on that issue. However, in rendering his final decision, it neglected to apply article 2531. Because we do not find that this error of law otherwise interdicted the trial court's fact finding, we do not find it necessary to undertake a de novo review.