721 So.2d 34 (1998)
Timothy K. GANDY
v.
UNITED SERVICES AUTOMOBILE ASSOCIATION and Susan Doucette.
Nos. 97-CA-1095C, 98-CA-215.
Court of Appeal of Louisiana, Fifth Circuit.
October 14, 1998.
T. Gregory Schafer, Schafer & Schafet, New Orleans, for Appellants United Services Automobile Association and Susan Doucette.
Richard C. Trahant, Metairie, for Appellee Timothy K. Gandy.
*35 Before CANNELLA and DALEY, JJ., and ROBERT M. MURPHY, J. Pro Tem.
CANNELLA, Judge.
Defendants, United Services Automobile Association (USAA) and Susan Doucette (Doucette), appeal a summary judgment on insurance coverage and a judgment on damages, penalties and attorney's fees. We affirm both judgments and render judgment on attorney's fees on appeal.
On September 25, 1995, plaintiff owned or leased three vehicles, a car, a truck and a Susuzki motorcycle, all insured by USAA. Because he and his wife were building a house, they decided to trade the leased Ford F-150 truck for a less expensive Ford Ranger. Plaintiff went to the Bill Watson Ford dealership to complete the trade. In order to insure that insurance was available and to inform the insurer of the change, the salesman, Scott Zemlich (Zemlich), telephoned USAA while plaintiff was present. Plaintiff also asked Zemlich to inform USAA that he wanted the motorcycle coverage to be terminated as of October 10, 1995. Plaintiff meant by 12:01 October 11, 1995.
On October 10, 1995, plaintiff and his wife were living with plaintiff's mother during the house construction. Plaintiff, a Sheriff's employee, left for work sometime before 5:00 p.m. His motorcycle was parked in front of the house when he left. The testimony indicated that it was still there at 10:00 or 10:30 p.m. The bike disappeared sometime between then and 6:00 a.m. on October 11, 1995, when his mother noticed that it was gone. She informed plaintiff, who in turn notified the police and USAA. Within the next few days, Doucette, USAA's claims representative informed plaintiff that the claim was being denied. First, she said it was because coverage ended on October 9, 1995. After plaintiff told her that coverage was not supposed to be terminated until October 10, 1995, Doucette investigated further and sought an opinion from her superiors. Doucette then told plaintiff that the claim was denied because plaintiff could not prove that the theft occurred during the policy period, before 12:01 on October 11, 1995.
The motorcycle was later found near a housing project, totally damaged. However, plaintiff was able to get the bike running again, after spending over $800. Although the bike was considered totaled, plaintiff had to continue paying the payments.
On August 26, 1996, plaintiff filed suit against defendants. In April of 1997, defendants filed a Motion for Summary Judgment on the basis that plaintiff could not show that the theft occurred on October 10th. They attached answers to interrogatories and an excerpt from a deposition, presumably plaintiff's, although it is not marked. In May of 1997, plaintiff filed a Motion for Summary Judgment on both the issue of coverage and on the issue of penalties and attorney's fees for bad faith failure to pay the claim under La. R.S. 22:658 and R.S. 22:1220. Plaintiff attached interrogatories showing that USAA did not send plaintiff a notice of cancellation. A hearing was held on both Motions on May 29, 1997. On June 11, 1997 the trial judge denied the motion filed by defendants and granted the motion filed by plaintiff only in regard to coverage. The case then went to trial in July of 1995 on the issues related to the amount of damages, penalties and attorney's fees. On August 26, 1997, the trial judge rendered judgment for plaintiff in the amounts of $898.65 for repairs to the bike and appraisal, penalties in the amount of $1,797.30 and attorney's fees in the amount of $2,500, for a total of $5,195.95, plus costs and judicial interest.
Defendants timely appealed the two judgments, which were consolidated by this court.[1]

SUMMARY JUDGMENTS
Defendants assert that its' summary judgment should have been granted and plaintiff's summary judgment on coverage denied.
*36 C.C.P. art. 966, providing for summary judgment procedure, was amended in 1997 as follows:
A. (1) The plaintiff or defendant in the principal or any incidental action, with without supporting affidavits, may move for a summary judgment in his favor for all or part of the relief for which he has prayed. The plaintiff's motion may be made at any time after the answer has been filed. The defendant's motion may be made at any time.
(2) The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action, except those disallowed by Article 969. The procedure is favored and shall be construed to accomplish these ends.
B. The motion for summary judgment and supporting affidavits shall be served at least ten days before the time specified for the hearing. The adverse party may serve opposing affidavits prior to the date of the hearing. The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law.
C. (1) After adequate discovery or after a case is set for trial, a motion which shows that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law shall be granted.
(2) The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.
D. The court shall hear and render judgment on the motion for summary judgment within a reasonable time, but in any event judgment on the motion shall be rendered at least ten days prior to trial.
E. A summary judgment may be rendered dispositive of a particular issue, theory of recovery, cause of action, or defense, in favor of one or more parties, even though the granting of the summary judgment does not dispose of the entire case.
Perrin v. Kuehne, 97-196 (La.App. 5th Cir. 12/10/97), 704 So.2d 839, 841.
Defendants argue that the trial judge erred in granting plaintiff's Motion for Summary Judgment finding coverage on the basis that no notice of cancellation was sent to plaintiff or because no premiums were refunded to plaintiff as of the date of the theft. They do not argue that the trial judge erred in denying its' Motion for Summary Judgment.
The trial judge does not provide reasons for granting plaintiff's Motion for Summary Judgment, although plaintiff asserted in his motion that defendant failed to send a notice of cancellation or refund the premiums.
The burden of proof is on the plaintiff to establish every fact essential to his claim and that his claim is within the insurance policy coverage. Bourque v. Audubon Ins. Co., 97-522 (La.App. 3rd Cir. 11/19/97), 704 So.2d 808, 811; Mercadel v. Tran, 92-0798 (La.App. 4th Cir. 3/29/94); 635 So.2d 438, 440; Pierce v. Aetna Life and Cas. Ins. Co., 572 So.2d 221, 222 (La.App. 1st Cir.1990); C.L. Morris, Inc. v. Southern Am. Ins. Co., 550 So.2d 828, 830 (La.App. 2nd Cir.1989).
On the other hand, when the insurer defends a suit against it brought by the insured on the ground that the policy was canceled, the insurer carries the burden of establishing facts which will relieve it of liability. Rozas v. Guillory, 349 So.2d 453, 455 (La.App. 3rd Cir.1977), writ denied, 351 So.2d 1205. I.C. Realty, Inc. v. Clifton Conduit Co., Division of General Cable Corp., 291 So.2d 422, 424 (La.App. 4th Cir.1974). The insurer must show facts constituting *37 "positive and unambiguous proof that the policy was canceled." Id.
La. R.S. 22:637 provides the mechanism for the insured party to cancel the insurance policy. It states:
§ 637. Cancellation by the insured; surrender
A. Cancellation by the insured of any policy which by its terms is cancelable at the insured's option or of any binder based on such policy may be effected by written notice thereof to the insurer and surrender of the policy or binder for cancellation prior to or on the effective date of such cancellation. In event the policy or binder has been lost or destroyed and cannot be so surrendered, the insurer may in lieu of such surrender accept and in good faith rely upon the insured's written statement setting forth the fact of such loss or destruction.
B. Within thirty days following such cancellation the insurer shall pay to the insured or to the person entitled thereto as shown by the insurer's records, any unearned portion of any premium paid on the policy as computed on the customary short rate or as otherwise specified in the policy, and any unearned commission. In the event the automobile insurance policy is canceled for nonpayment to the finance company, any unearned premium and commission shall be computed on a pro rata basis. If no premium has been paid on the policy, the insured shall be liable to the insurer for premium for the period during which the policy was in force.
C. The surrender of a policy to the insurer for any cause by any person named therein as having an interest insured thereunder shall create a presumption that such surrender is concurred in by all persons so named.
D. This Section shall not apply to life insurance policies or to annuity contracts, nor to the contracts provided in Part XV of this Chapter.
La. R.S. 22:637 places the burden of cancellation upon the insured. The insured can achieve a valid cancellation by giving written notice to the insurer and surrendering the actual policy of insurance. Chrysler Credit Corp. v. Liberty Mutual Ins. Co., 483 So.2d 1140, 1142 (La.App. 5th Cir. 1986). It has also been held that either some kind of written notice or surrender of the policy will effect cancellation of the policy. Forston v. Williams, 518 So.2d 14 (La.App. 4th Cir.1987); Gar Real Estate and Ins. Agency v. Mitchell, 380 So.2d 108, 109 (La. App. 1st Cir.1979). See also: Roberson Advertising Services v. Associated Agencies, Inc., 543 So.2d 960, 963 (La.App. 5th Cir. 1989). We find no jurisprudence with these facts, where there is only a verbal request to cancel by the insured. We agree with defendants that the USAA was not required to send plaintiff a notice of cancellation. That is a requirement when the insurer cancels the policy, as set forth in La. R.S. 22:636.1 through 22:636.6. Nor is failure to send a refund prior to the incident giving rise to the claim a basis for maintaining an otherwise canceled policy. However, the legislature has set out a mechanism for plaintiff to have a valid cancellation of the policy in R.S. 22:637. Although the language there is permissive, it must have intended for the insured to perform some act (a writing or surrender of the policy) to cancel, other than just a verbal request. Otherwise, the statute would be unnecessary. Since we do not find that the legislature intended to enact an unnecessary law, we find that a verbal request by the insured party to cancel the policy is not sufficient to effect cancellation by the insured prior to the insurable event. Thus, we find that the trial judge did not err in granting plaintiff's motion for summary judgment.

DAMAGES AND PENALTIES
The trial judge awarded plaintiff $1797.30 as penalties pursuant to La. R.S. 22:1220. Under R.S. 22:1220, the insurer owes the insured the duties of good faith and fair dealing, to adjust claims fairly and promptly and to make a reasonable effort to settle claims. An insurer who breaches these duties is liable for any damages sustained as a result of the breach.[2]
*38 In this case, the policy was still in effect. Since defendants' should have known the legal requirements for an insured to cancel the policy, their refusal to provide coverage for the theft of the motorcycle was arbitrary and/or capricious conduct and a breach of its' duties to plaintiff under R.S. 22:1220. Thus, we find that the trial judge did not err in awarding penalties to plaintiff.[3]
The trial judge awarded plaintiff the amount of $898.65 for repairs to the bike and appraisal. We find no error in this award, testified to by plaintiff.

PLAINTIFF'S "APPEAL" AND ATTORNEY'S FEES
Plaintiff requests that this court increase the damages awarded by the trial judge. Our review of the record indicates that plaintiff failed to file an answer to the appeal or to file a cross-appeal. Thus, we are precluded from addressing that claim. La. C.C.P. arts.2082, 2133.
Plaintiff also requests an increase in attorney's fees for the appeal. Unlike plaintiff's claim for an increase in damages, we are not precluded from awarding an increase in attorney's fees for the work performed for the appeal since that was not an issue in the trial court. Therefore, we find that plaintiff is entitled to an additional award of attorney's fees in the amount of $1,500.
Accordingly, we hereby affirm the summary judgment granted in favor of plaintiff. The judgment awarding damages, attorney's fees and penalties is hereby affirmed. Plaintiff is further awarded $1,500 in attorney's fees for this appeal.
Costs of this appeal are to be paid by defendants.
SUMMARY JUDGMENT AND JUDGMENT ON DAMAGES, PENALTIES AND ATTORNEY'S FEES AFFIRMED. JUDGMENT ON ATTORNEY'S FEES ON APPEAL RENDERED.
NOTES
[1] In brief, plaintiff requests an increase in the damages and attorney's fees. However, plaintiff neither filed a Motion for Appeal or an Answer to the Appeal. This court is precluded from addressing any claim for modification of a judgment by a party who has failed to file an appeal or answer the appeal. La.C.C.P. arts.2082, 2087, 2121 and 2133.
[2] La. R.S. 22:1220 states:

A. An insurer, including but not limited to a foreign line and surplus line insurer, owes to his insured a duty of good faith and fair dealing. The insurer has an affirmative duty to adjust claims fairly and promptly and to make a reasonable effort to settle claims with the insured or the claimant, or both. Any insurer who breaches these duties shall be liable for any damages sustained as a result of the breach.
B. Any one of the following acts, if knowingly committed or performed by an insurer, constitutes a breach of the insurer's duties imposed in Subsection A:
(1) Misrepresenting pertinent facts or insurance policy provisions relating to any coverages at issue.
(2) Failing to pay a settlement within thirty days after an agreement is reduced to writing.
(3) Denying coverage or attempting to settle a claim on the basis of an application which the insurer knows was altered without notice to, or knowledge or consent of, the insured.
(4) Misleading a claimant as to the applicable prescriptive period.
(5) Failing to pay the amount of any claim due any person insured by the contract within sixty days after receipt of satisfactory proof of loss from the claimant when such failure is arbitrary, capricious, or without probable cause.
C. In addition to any general or special damages to which a claimant is entitled for breach of the imposed duty, the claimant may be awarded penalties assessed against the insurer in an amount not to exceed two times the damages sustained or five thousand dollars, whichever is greater. Such penalties, if awarded, shall not be used by the insurer in computing either past or prospective loss experience for the purpose of setting rates or making rate filings.
D. The provisions of this Section shall not be applicable to claims made under health and accident insurance policies ...
[3] Defendants failed to assign as error or otherwise contest the award of attorney's fees in brief to this court. We consider the issue abandoned pursuant to Uniform Rules, Courts of Appeal, Rule 2-12.4.