744 So.2d 80 (1999)
Paul PEROT, Jr., Plaintiff-Appellee,
v.
LINK STAFFING SERVICES, Defendant-Appellant.
No. 99-229.
Court of Appeal of Louisiana, Third Circuit.
June 23, 1999.
*81 Craig A. Davis, Lafayette, for Paul Perot Jr.
Kraig Thomas Strenge, Lafayette, for Link Staffing Services.
BEFORE: WOODARD, AMY, and SULLIVAN, Judges.
*82 WOODARD, Judge.
Mr. Paul Chester Perot, Jr., was injured on June 1, 1997, while in the course and scope of his employment with Link Staffing Services (LSS). AIG Claim Services (AIG), LSS' workers' compensation insurer, denied his request to consult a physician of his choice. Mr. Perot filed a petition (Perot I), and the workers' compensation judge granted his request in a decision signed on July 16, 1998. Claiming that LSS and AIG did not comply with Perot I, on August 25, 1998, Mr. Perot filed a rule for contempt (Perot II) also requesting penalties and attorney's fees. Finding that the rule for contempt should be more properly entitled Motion for Penalties and Attorney's Fees under La.R.S. 23:1201(G), the workers' compensation judge awarded Mr. Perot $3,000.00 in penalties and $1,500.00 in attorney's fees. LSS appeals suspensively. We affirm.

FACTS
Mr. Paul Chester Perot, Jr. was injured on June 1, 1997, while in the course and scope of his employment with LSS. An accident report specifies that he and a co-worker were unloading a truck when a dolly, on which a crate was placed, swerved and sent the crate smashing his foot against a steel wall. He fell and was unable to "get up." He was immediately transported to the emergency room at the Lafayette General Medical Center (LGMC). Then, LSS requested that he consult with Dr. Ray C. Boyer, who referred him to Dr. Thomas J. Montgomery. Neither of the two doctors released him to return to work. Mr. Perot then requested to consult with a physician of his choice, which AIG denied. Then, AIG discontinued payment of his workers' compensation benefits.
On January 27, 1998, Mr. Perot filed a petition against LSS, requesting authorization to consult with a physician of his choice, penalties, and attorney's fees. A hearing was held on June 24, 1998. In a judgment signed on July 16, 1998, the workers' compensation judge granted his request to consult with a physician of his choice, but denied his claim for penalties and attorney's fees. The workers' compensation judge also granted LSS' request to have Mr. Perot evaluated by a physician selected by LSS for an Independent Medical Evaluation (IME), but denied its claim to have his benefits suspended or terminated.
On August 25, 1998, Mr. Perot filed a petition entitled "rule for contempt" alleging the following:
4.
In spite of this Court's ruling, as of August 24, 1998, claimant has yet to see a physician of his choice, and has been refused on numerous occasions to see a physician of his choice.
5.
Claimant shows that he has contacted Dr. Michael Heard's office on numerous occasions, in order to schedule his appointment, but each time has been told that AIG, the employer's insurer, has refused to approve of his appointment. Claimant has also called the AIG adjustor in New Orleans, as well as the Link Staffing office in Houston, and has been told by each of these that they refuse to allow him to see a physician of his choice.
WHEREFORE, PREMISES CONSIDERED, plaintiff prays that the employer and its insured be held in contempt of court, that penalties and attorney's fees be awarded due to their defiance of this Court's ruling and that he be allowed to see a physician of his choice immediately.
(Emphasis added.)
A hearing on the motion for contempt was originally set for September 18, 1998. Mr. Perot then filed a motion for continuance, which the workers' compensation judge granted, and the hearing date was *83 re-fixed for October 2, 1998. On the workers' compensation judge's own motion, the matter was again reset and finally heard on October 23, 1998. The workers' compensation judge's decision, signed November 11, 1998, granted Mr. Perot $3,000.00 in penalties and $1,500.00 in attorney's fees. LSS appeals suspensively.

ASSIGNMENTS OF ERROR
LSS asserts that the trial court erred in: (1) converting Perot's rule for contempt into a motion for penalties and attorney's fees in denial of LSS' right to due process of law, and (2) finding that LSS had failed to pay a final appealable judgment within the meaning of La.R.S. 23:1201(G)

LAW

DENIAL OF DUE PROCESS
In this assignment of error, LSS contends that the workers' compensation judge's decision to convert Mr. Perot's rule for contempt into a motion for penalties and attorney's fees, under La.R.S. 23:1201(G), violated its right to due process of law set forth in La. Const. Art. I, § 2. Specifically, it asserts that it was not given adequate notice required by due process to present a defense on the motion. Instead, it alleges that "the only notice given to Link Staffing was that it was being ruled into court for the alleged contempt of an adjuster who had been contacted by a physician's office and without cause refused to authorize the second medical opinion examination" ordered by the workers' compensation judge.
Based on the precepts of the Fourteenth Amendment of the United States Constitution, La. Const. Art. I, § 2, provides that "[no] person shall be deprived of life, liberty, or property, except by due process of law." The right to due process "is rooted in the canons of decency and fairness." Maumus v. Department of Police, New Orleans, 457 So.2d 37, 48 (La.App. 4 Cir.1984); writ denied, 461 So.2d 1054 (La.1985). In effect, it only requires that notice and an opportunity to be heard in some type of hearing, be afforded prior to the taking of life, liberty, or property. See Wilson v. City of New Orleans, 479 So.2d 891 (La.1985). In Klein v. Klein, 487 So.2d 775, 776 (La.App. 3 Cir.1986) (citing Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950)), we stated:
A basic requirement of due process is notice reasonably calculated under all circumstances to apprise interested parties of the pendancy of the action and afford them an opportunity to present objections.
(Emphasis added). See also Louisiana State Bar Ass'n v. Levy, 292 So.2d 492 (La.1974). The requirements of due process apply to agencies and government hearing officers as well as judges. Wilson, 479 So.2d 891.
Nevertheless, due process is not a technical principle with a fixed content, but rather, it is a flexible concept which may be adapted to the specific demands of a particular situation. Id. Thus, to determine what constitutes adequate notice, for the purpose of due process, we must look at the circumstances of the particular case. Choates v. Choates, 329 So.2d 219 (La.App. 3 Cir.1976).
In the case sub judice, the issue of due process arises in the context of a workers' compensation litigation. In such a case, the fundamental principles of procedure, such as reasonable notice, are applicable. Howard v. A & M Const. Co., 93-1013 (La.App. 1 Cir. 4/29/94); 637 So.2d 575. Nonetheless, we also consider the particularities of workers' compensation law stated in La.R.S. 23:1317, as follows:
The workers' compensation judge shall not be bound by technical rules of evidence or procedure other than as herein provided, but all findings of fact must be based upon competent evidence.... The workers' compensation judge shall decide the merits of the *84 controversy as equitably, summarily, and simply as may be.
(Emphasis added). In Meche v. Foremost Management Corp., 93-1390, p. 5 (La.App. 3 Cir. 5/4/94); 640 So.2d 585, 587, writ denied, 96-152 (La.3/15/96); 669 So.2d 429, we stated that La.R.S. 23:1317 "reflects the legislature's intent, in compensation cases, to materially relax evidentiary and procedural rules and subordinate procedural considerations to the discovery of the truth and the protection of substantive rights." When a claimant's petition is unartfully drafted, it must be construed liberally. Bassemier v. W.S. Young Const. Co., 110 So.2d 766 (La.App. 1 Cir.1959). All doubts arising out of the inadequacies contained in a petition must be resolved in favor of the claimant when defendant-employer is adequately apprized by the petition of a legal claim against him. Id.
In the instant case, although the petition was entitled "rule for contempt," it did not only give notice to LSS that it was being brought into court for an alleged contempt, but it also specified, in its prayer for relief, that Mr. Perot should be awarded penalties and attorney's fees due to the defendant's defiance of the workers' compensation judge's ruling. Therefore, Mr. Perot's rule for contempt was sufficient under the circumstances to apprize LSS of the pendency of the action and to afford it an opportunity to present a defense on the issue of La.R.S. 23:1201(G) penalties and attorney's fees during the October 23 hearing.

PENALTIES AND ATTORNEY'S FEES
The workers' compensation judge awarded Mr. Perot penalties and attorney's fees on the basis of La.R.S. 23:1201(G). The statute provides, in pertinent part:
If any award payable under the terms of a final, nonappealable judgment is not paid within thirty days after it becomes due, there shall be added to such award an amount equal to twenty-four percent thereof or one hundred dollars per day together with reasonable attorney fees, for each calendar day after thirty days it remains unpaid, whichever is greater, which shall be paid at the same time as, and in addition to, such award, unless such nonpayment results from conditions over which the employer had no control.
(Emphasis added). In the context of workers' compensation, whether a judgment is nonappealable is defined in La. R.S. 23:1310.5, as follows:
The decision of the workers' compensation judge shall be final unless an appeal is made to the appropriate circuit court of appeal. An appeal which suspends the effect or execution of an appealable judgment or order must be filed within thirty days. An appeal which does not suspend the effect or execution of an appealable judgment or order must be filed within sixty days. The delay for filing an appeal commences to run on the day after the judgment was signed or on the day after the district office has mailed the notice of judgment as required by Louisiana Code of Civil Procedure Article 1913, whichever is later. Motions for new trial shall not be entertained in disputes filed under this Chapter.
(Emphasis added). Therefore, the defendant had until August 14, 1998 to lodge a suspensive appeal, and in the event that it did not, it had until September 14, 1998 to authorize Mr. Perot's visit to a physician of his choice, Dr. Michel Heard, without incurring La.R.S. 23:1201(G) sanctions. Thus, when Mr. Perot filed a petition on August 25, 1998, before the expiration of the delays imparted by La.R.S. 23:1201(G), he acted prematurely.
In a workers' compensation case, whether an action is defined as premature is stated in La.R.S. 23:1314. However, the procedure provided by the statute only applies to that part of the litigation which takes place prior to the rendition of a judgment. See La.R.S. 23:1314. Therefore, the statute does not apply in the case *85 sub judice where Mr. Perot seeks to enforce a workers' compensation judge's decision. The general rule applicable to a prematurely filed petition is set forth in La.Code Civ.P. art. 926, which states that a defense of prematurity must be raised through a dilatory exception, and La.Code Civ.P. art. 928, which provides:
A. The declinatory exception and the dilatory exception shall be pleaded prior to or in the answer, or prior to the confirmation of a default judgment. When both exceptions are pleaded, they shall be filed at the same time, and may be incorporated in the same pleading. When filed at the same time or in the same pleading, these exceptions need not be pleaded in the alternative or in a particular order.
B. The peremptory exception may be pleaded at any stage of the proceeding in the trial court prior to a submission of the case for a decision and may be filed with the declinatory exception or with the dilatory exception, or both.
Finally, La.Code Civ.P. art. 926(B) provides that "[a]ll objections which may be raised through the dilatory exception are waived unless pleaded therein."
Based on the record in the instant case, LSS did not file an exception of prematurity, nor did it even raise the issue, either after the receipt of Mr. Perot's petition, at the outset of the October 23, 1998 hearing, or upon rendition of the workers' compensation judge's oral reasons for judgment. Thus, LSS waived its potential defense of prematurity.
Proceeding with the merits of LSS' assignment of error, it argues that the workers' compensation judge's finding that it failed to comply with its judgment within thirty days of the date at which it became unappealable was an error. Specifically, it asserts that there is no evidence in the record to show that LSS and AIG refused Dr. Heard's visit after Perot I was signed or after the delays set forth by La.R.S. 23:1201(G).
Whether the workers' compensation judge's decision to grant Mr. Perot an award of penalties and attorney's fees was proper is essentially a question of fact which we will not disturb on appeal in the absence of a manifest error. Gallien v. Winn-Dixie, 96-832 (La.App. 3 Cir. 12/11/96); 685 So.2d 531. When the trier of fact's findings are reasonable in light of the entire record, an appellate court may not reverse a choice between two permissible views of the evidence. Banks v. Industrial Roofing & Sheet Metal, 96-2840 (La.7/1/97); 696 So.2d 551. While considering the evidence adduced to reach a decision, the workers' compensation judge is not strictly bound by the technical rules of the Louisiana Code of Evidence. La. R.S. 23:1317(A); Ramsey v. Cash & Carry Foods, Inc., 95-544 (La.App. 3 Cir. 11/2/95); 664 So.2d 511. Nevertheless, the workers' compensation judge's findings must be based upon competent evidence. La.R.S. 23:1371(A); Ramsey, 664 So.2d 511.
In the instant case, it is not disputed that some evidence was introduced to show that AIG denied Dr. Heard's visit. However, LSS argues that such evidence was not competent to serve as a basis for the workers' compensation judge's decision on the issue of penalties and attorney's fees, because it was evidence of a denial which allegedly occurred before the workers' compensation judge signed Perot I, on July 16, 1998. At that time, the workers' compensation judge's decision was not yet either final or unappealable, thus, LSS did not yet have to act in furtherance of the workers' compensation judge's order; therefore, Mr. Perot did not bring forth any evidence of LSS' denial of Dr. Heard's visit after expiration of the La.R.S. 23:1201(G) delays. We disagree.
During the October 23, 1998 hearing, Ms. Margie Conlin, a clerical supervisor for Dr. Heard, testified that she scheduled Mr. Perot for an appointment on July 8, 1998, but did not obtain approval from AIG or LSS. She stated that she contacted Mr. *86 Kraig T. Strenge, counsel for LSS, who told her that "he was going to contact the workers' comp (sic) company and get them to call me to approve the office visit." AIG never contacted her to inform her of their decision to retract their prior denial of the visit. She stated that she spoke to a person named Corrina at AIG, who told her that she was not handling the claim and could not give her any information.
Mr. Perot, also, testified that he contacted a certain person named Carolyn with AIG. He stated, in pertinent part:
I called her up and told her I'd like to see the judge ordered for me to see the doctor of my choice. And she told me I could not see a doctor of my choice. I would have to go see Dr. Montgomery. And I said, "Well, no, the Judge ruled, you know." And she said, "No. The insurance the insurance will not pay for it."
Apparently, this communication took place a week after the hearing on Perot I. Mr. Perot also stated that he called AIG again "around two weeks after ... the judge made the ruling (sic)." Mr. Perot then stated that he has yet to see Dr. Heard "because the insurance don't (sic) want to pay for it." However, he asserted that he was not aware that Mr. Craig A. Davis, his attorney, had received several letters from Mr. Strenge regarding his case.
Indeed, in a July 22, 1998 letter addressed to Mr. Davis, Mr. Strenge stated:
Your client has been contacting my adjuster in New Orleans, as well as the Link Staffing Office in Houston ever since the trial of this matter. I would appreciate all formal requests for medical examinations or other problems your client may be having with his compensation claim being (sic) forwarded to my attention while this is pending. Please speak to your client about this.
Then in a September 2, 1998 letter, also addressed to Mr. Davis, he stated:
It is my understanding that my adjuster has for quite some time now approved the visit Judge Kellar granted your client with Dr. Heard. If you are having a problem scheduling that visit, I would appreciate you letting me know. I think it is inappropriate for you and/or your client to be making any direct contact with my clients when you are aware of my representation and the subject matter of your contact is directly related to a pending disputed claim....
(Emphasis added).
The issue before us is whether the workers' compensation judge's decision, finding that LSS and AIG denied Mr. Perot's visit to Dr. Heard was based on competent evidence and was reasonable.
While we consider the issue, we disagree with LSS' argument that the evidence showing a denial which allegedly occurred before Perot I was signed was incompetent to serve as a basis for the workers' compensation judge's decision on the issue of La.R.S. 23:1201(G) penalties and attorney's fees. LSS' argument is directed to the weight to be given to such evidence, but nothing more. Simply because the evidence allegedly establishes that a denial took place during the statute's penalty free period, does not in itself make it incompetent evidence for the purpose of showing that AIG, in fact, denied Dr. Heard's visit on or after September 16, 1998, the time at which Perot I became final and nonappealable.
The workers' compensation judge had to make a credibility determination between two different views of the evidence. First, she could have viewed the evidence as suggested by Mr. Strenge. In the alternative, in light of AIG's previous denials, she could have found that AIG should have contacted Mr. Perot or Dr. Heard's office to tell them of their decision to now approve the visit. Neither AIG, nor LSS, ever communicated to either Mr. Perot, and especially to Ms. Conlin, their decision to approve the visit. Certainly, the July 22 letter does not communicate such an approval to anyone. Concerning the September *87 2 letter, the workers' compensation judge did not find that it was conclusive evidence that AIG and LSS did, in fact, approve the visit. Indeed, it appears that such a letter was sent mainly in response to Mr. Perot's rule for contempt. Thus, we find no manifest error in the workers' compensation judge's decision.
Finally, we cannot award Mr. Perot additional attorney's fees for the prosecution of the appeal, as requested in his appellate brief. On the basis of La.Code Civ.P. art. 2133, the jurisprudence of this circuit mandates that we do not consider such a demand if not made pursuant to an appeal or an answer to an appeal.[1]

CONCLUSION
For the aforementioned reasons, the workers' compensation judge's decision to grant Mr. Perot penalties and attorney's fees is affirmed. Costs of this appeal are assessed to the appellant.
AFFIRMED.
WOODARD, J., dissented in part.
WOODARD, J., dissenting in part.
It may look like a duck, but it does not quack like a duck. I am referring to La. Civ.P. art. 2133.
For years, although it appears that the Louisiana Supreme Court has never ruled on this issue, our circuit, along with all others except most recently the fifth, has relied on 2133 to justify the denial of attorney fees for work done on an appeal, when the Appellee did not make the request in an appeal or an answer to the appeal, even though the Plaintiff (Appellee) was clearly entitled to the fees, by law. And now, since this prevailing interpretation of 2133 has become an institutiona body of well settled jurisprudencethe questions become, "What's the harm," "Why change it?" The short answer is because such usage is illegitimate; it is an improper application of the law.
Under the plain meaning of La.Code Civ.P. art. 2133, an Appellee is required to file an appeal or an answer only when seeking to modify, revise, reverse in part, the trial court's judgment, or demand damages against the Appellant. The article does not address or contemplate the procedure one must follow when requesting attorney fees, from the appellate court, for work done on the appellate level. Nor can it be said that the legislature intended that appellate attorney fees be characterized as "damages" and that, therefore, the article applies to an Appellee's request for attorney fees on appeal through that language. See Sharbono v. Steve Lang & Son Loggers, 97-110 (La.7/1/97); 696 So.2d 1382.
Notwithstanding, jurisprudence has been developed, and followed, which has rewritten 2133 to apply to attorney fees on appeal. This, I suggest, has been a legal error. La.Civ.Code art. 9 provides that "[w]hen a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature."
2133 may look like a duck because it may seem logical to some that because the appellate court is doing something different from what the trial court did (when it awards attorney fees for appellate work), the appellate court is, at least, modifying the lower court's judgment. However, 2133 does not quack like a duck because, in fact, the appellate court is not modifying, reversing, or amending the judgment of the lower court when it awards an increase of attorney fees based on the work performed on appeal, even though the appellate court may pronounce the magic words, "WE AMEND THE JUDGMENT," in its decree.
Appellate courts' usage of 2133 as its authority for "amending" the trial court's judgment to deny or award additional attorney *88 fees for the appeal creates a logical and legal impossibility, because applying 2133, in this situation, implies that the trial court had the power to render attorney fees on appeal but did not do so, therefore, when the appellate court makes such an award, it is "amending" that court's judgment. Were the appellate court changing the trial court's award of attorney fees granted for work performed on the lower court, this interpretation would be correct. However, that is not what the appellate court is doing when it awards an increase of attorney fees for the appeal. On the contrary, in making the award, although the appellate court is doing something different from what the trial court did in its judgment regarding attorney fees, the appellate court is not modifying, revising, or reversing what the trial court did. The appellate court is rendering its own distinct judgment for attorney fees earned for work done on the appeal, which only it has the power to do and which is before it, only.
Our brethren in the fifth circuit recently recognized this distinction between the trial court's judgment and the appellate court's judgment on this issue, in Gandy v. United Serv. Auto. Ass'n, 97-1095 (La. App. 5 Cir. 10/14/98); 721 So.2d 34, writ denied, 98-2836 (La.1/15/99, 736 So.2d 208), and noted that 2133 is not applicable to an award of attorney fees on appeal. The Gandy court granted the Appellee additional attorney fees for the appeal, absent an answer or appeal filed by the Appellee, and stated:
Plaintiff requests that this court increase the damages awarded by the trial judge. Our review of the record indicates that plaintiff failed to file an answer to the appeal or to file a cross-appeal. Thus, we are precluded from addressing that claim. La.C.C.P. arts. 2082, 2133.
Plaintiff also requests an increase in attorney's fees for the appeal. Unlike plaintiff's claim for an increase in damages, we are not precluded from awarding an increase in attorney's fees for the work performed for the appeal since that was not an issue in the trial court. Therefore, we find that plaintiff is entitled to an additional award of attorney's fees in the amount of $1,500.
. . . .
SUMMARY JUDGMENT AND JUDGMENT ON DAMAGES, PENALTIES AND ATTORNEY'S FEES AFFIRMED. JUDGMENT ON ATTORNEY'S FEES ON APPEAL RENDERED.
(Emphasis added.)
While 2133 does not expressly provide a procedure by which Appellees are to request appellate attorney fees if they do not wish to appeal or answer the appeal, I submit that this omission does not mean that appellate courts do not have the authority to grant such an award or that such an award is not warranted.
Requesting attorney fees for the appeal is a hybrid situation. It is unlike other issues placed before appellate courts to decide, mainly, because it has nothing to do with the trial court. While 2133 does not provide the procedure for making the request on appeal, I believe that La.Code Civ.P. art. 2164 does provide appellate courts with the authority and mechanism for rendering such a judgment (especially when a request is made in a brief) without necessitating that the Appellee file either an appeal or an answer, because implicit within the mandate of 2164 is the authority for appellate courts to act on their own motion when they deem it appropriate:
The appellate court shall render any judgment which is just, legal, and proper upon the record on appeal. The court may award damages for frivolous appeal; and may tax the costs of the lower or appellate court, or any part thereof, against any party to the suit, as *89 in its judgment may be considered equitable.
(Emphasis added.)
Furthermore, in Primvest, Inc. v. Dugas, 460 So.2d 718, 720-21 (La.App. 3 Cir. 1984), we stated that "[t]he court should render the relief to which a party is entitled under the evidence presented even if it has not been demanded in the pleadings." (Emphasis added.) And, it is important to note that the same information needed to determine the appropriateness of an award of attorney fees on appeal is in the record whether the Appellee made the request for the fees in an answer, appeal, or a brief. Typically, the only difference in cases where fees were granted or denied was the use of a legally insupportable, but jurisprudential mandated, procedure read into 2133.
I suggest that it is time to retire this old, lame "duck" to gumbo.
NOTES
[1] Woodard, Judge, dissents with reasons.