DREW, J.
|,Andrew Davisson and Lori Davisson were unhappily married for seven years. Three bitter lawsuits have emanated from the breakup of this marriage,[1] all filed in Bossier Parish:
• SUIT ONE involved them divorce, filed and granted in 2002. The salient feature of this litigation revolved around custody of and visitation with their only child, “J.D.”[2]
• SUIT TWO was a request by Lori for a protective order against Andrew, filed in December of 2009, and granted in January of 2010.
• SUIT THREE is Andrew’s defamation suit, filed in January of 2011 against a licensed clinical social worker, Leigh Ann O’Brien,[3] who was appointed by the *469 court in early 2007 to evaluate the parties and advise the court in SUIT ONE. Andrew claimed in this suit that O’Brien defamed him in her communications and recommendations to the court in February 2010. He now appeals the trial court’s granting of O’Brien’s motion for summary judgment and the denial of his motion to compel.
The trial court correctly granted summary judgment in favor of O’Brien and also correctly denied Andrew’s motion to compel further discovery. We affirm in all respects, at Andrew’s cost. We also assess attorney fees for this frivolous appeal.
FACTUAL CHRONOLOGY
2002 — Divorce was granted and a Joint Custody Implementation Plan |2(“JCIP”) was entered[4] in SUIT ONE.
Early 2007 — O’Brien was appointed by Judge Bruce M. Bolin to evaluate the parties and their family members, relative to the custody dispute.[5]
June 2007 — O’Brien interviewed Andrew, Lori, the child, and some family members. Andrew took part in only two evaluative sessions in June of 2007, then refused to cooperate with further evaluations.[6]
July 10, 2007 — O’Brien wrote to the court and counsel, advising them of Andrew’s uncooperativeness with her evaluations, and his need for drug screening.
July 13, 2007 — Andrew’s attorney wrote to the court and opposing counsel, complaining about O’Brien’s direct contact with the court, and requesting that she be replaced with another mental health evaluator.[7]
September 10, 2007 — By letter, O’Brien alerted the court and opposing counsel as to her concerns about Andrew’s mental status and drug abuse.[8]
|sLate 2007 and 2008 — In this lengthy time frame, O’Brien had no contact with the parties or the child, as far as we can tell from this record.
January 2009 — O’Brien was requested by Judge Bolin’s secretary to again evaluate *470 the parties. All parties were supposed to contact O’Brien to set up evaluation sessions. Andrew never did so. O’Brien saw the child and Lori very sporadically during the rest of 2009.
December 2009 — The court issued a temporary restraining order (SUIT TWO), prohibiting Andrew from directly contacting Lori or their son.
January 2010 — Andrew was arrested on felony drug and weapons charges.
February 2, 2010 — Three years after her initial appointment by the court, O’Brien wrote to the court and counsel, advising that in her recent sessions with the minor child, and after reviewing extensive collateral information from Lori, she had discovered that Andrew:
(1) had physically, mentally, and emotionally abused the child;
(2) had forced the son to use Androgel;[9]
(3) had abused medications and alcohol while his son was with him;
(4) had suffered significant impairment of judgment because of the substance abuse; and
(5) had placed his son in extreme physical and emotional danger during visits.
February 8, 2010 — Andrew again refused to meet with the social worker. O’Brien signed an affidavit that was attached to Lori’s motion seeking temporary custody and a change in permanent custody. The affidavit was in substantial conformity with her letter sent days earlier to the court. O’Brien also contacted Child Protective Services.
July 19, 2010 — Judge Bolin issued an interim order restricting Andrew’s visitation to one hour per week, but only if supervised by O’Brien.[10]
January 3, 2011 — Four years after O’Brien’s court appointment, Andrew filed this lawsuit (SUIT THREE) against her, claiming that she defamed him by her communications on February 2 and 8, 2010. He also alleged that |40’Brien secretly met with Lori[11] and with their son in violation of a court order, and that O’Brien refused to provide him with complete copies of her counseling records in the custody case.
March 2011 — Andrew was granted pauper status; O’Brien was served.
May 3, 2011 — An answer was filed by O’Brien, raising the defenses that
(1) her statements to the court were true;
(2) she was required by law to report suspected child abuse; and
(3) she had statutory immunity.[12]
*471 May 12, 2011 — O’Brien filed a motion for summary judgment.
May 19, 2011 — Andrew signed an affidavit opposing the motion.
May 24, 2011 — Andrew filed an opposition to motion for summary judgment, annexing Andrew’s affidavit from May 19.
June 29, 2011 — O’Brien was deposed for two hours by Andrew’s lawyer,[13] |5who insisted on examining what the clinical social worker did in this case in 2007. After several objections, O’Brien’s attorney terminated the deposition after ascertaining that opposing counsel had finished his questioning about the 2010 events that form the subject of this lawsuit.[14]
July 22, 2011 — Andrew filed a motion to compel discovery.
September 21, 2011 — Andrew’s lawyer wrote Judge Bolin to suggest that he consider recusal in this case, since his handling of the custody case could make him a witness in this defamation case. Judge Bolin accordingly entered an order of recu-sal, and Judge Michael Craig was later assigned this defamation suit.
November 7, 2011 — Extensive and thorough argument was had on O’Brien’s mo *472 tion for summary judgment, and on Andrew’s motion to compel. The trial court patiently discussed the proceedings with both lawyers, then granted the motion for summary judgment, denied the motion to compel,[15] and thoroughly explained its reasoning.
^December 5, 2011 — Judgment granting O’Brien’s summary judgment, and denying Andrew’s motion to compel, is signed by Judge Craig.[16]
December 16, 2011 — Andrew filed his notice of intent to appeal.[17]
PLAINTIFF’S ARGUMENTS

Motion for Summary Judgment

• Andrew claims that since the motion for summary judgment is predicated upon O’Brien’s statutory immunity and her truthfulness, genuine issues of material fact remain concerning those matters.
• Andrew asserts that O’Brien’s deposition proves that she lied in her affidavit when she claimed that:
(1) she had personal knowledge of the information in the 2010 letter;
(2) all the information in the letter was true and correct; and
(3) the information was provided in good faith.[18]
• Andrew argues that immunity under La. Ch. C. art. 611 is not absolute.[19]
| ^Discovery
Andrew claims to have been denied adequate discovery, as guaranteed under La. C.C.P. art. 966(C)(1), because O’Brien unilaterally terminated her deposition. He argues that since O’Brien relied upon her 2007 interviews with Andrew, she was wrong to have declined to answer questions pertaining to the 2007 events.[20]

*473
Written Reasons for Judgment

Andrew argues that La. C.C.P. art. 1917(A) requires the trial court to provide written reasons for judgment, since the judgment was appealable.

Sanctions for Frivolous Appeal

Andrew denies unfairly criticizing O’Brien in these proceedings, but asserts that since he has the burden of establishing O’Brien’s reckless disregard for the truth, probing questions will be required.
DEFENDANT’S RESPONSES

Motion for Summary Judgment

O’Brien maintains that:
• her 2010 actions were based on the truth;
• as a social worker, she was required by La. Ch. C. art. 609 to report suspected child abuse;
• she is conferred immunity for such reports by La. Ch. C. art. 611;
• after her 2010 interview with the child, she could have faced criminal prosecution under La. R.S. 14:403, had she failed to report what she Rclearly perceived to be criminal child abuse;[21]
*474 • the motive behind this rancorous litigation is Andrew’s goal of removing O’Brien as the court-appointed social worker in SUIT ONE, which was first urged five years ago and is still pending before the new judge with jurisdiction over the custody case;
• she has not restricted Andrew’s visitation with his son or filed criminal charges against Andrew;
| o* the restrictions were ordered by a judge, and the criminal charges were instituted by a prosecutor;
• Andrew refused to cooperate with her in this case, and he has not met with her for an evaluation since the first two sessions in June of 2007;
• she has immunity for her statements, and a qualified privilege for reporting criminal activity;[22]
• to prevail in this case, Andrew would have to prove not only that the comments were defamatory, but also that the statements were made with malice or with the purpose of misleading authorities;
• those who in good faith report suspected criminal activity should not face civil liability for mistakes in judgment attributable to simple negligence;
• she did not make a mistake in this case, but even had she done so, she would still be immune from civil liability;
• Andrew has no proof that she ever showed any reckless disregard for the truth;
• she had no duty to conduct an independent investigation when she felt, based on statements from the child, that there was child abuse;[23]
• the 2007 statements are not the subject of this lawsuit;
• she clearly stated in the February 2010 letter that she believed there was abuse based upon what the child had told her as well as collateral information from the mother;
• it is ridiculous to suggest that O’Brien could report only abuse that she had personally witnessed;
• no Louisiana court has held a social worker liable for reporting suspected child abuse;
• any concerns about O’Brien’s conduct as a health care professional should not be handled in this forum;[24]
|10* summary judgment is appropriate in defamation cases arising from reporting a crime and when immunity is at issue;
• in Kennedy, supra, the defamation claim arose from the reporting of criminal activity, and the Louisiana Supreme Court found that summary judgment was appropriate; [25] and
• summary judgment is appropriate here.

Discovery

O’Brien contends that the motion to compel was properly denied. She answered interrogatories and also answered *475 questions at the deposition regarding statements that she made in 2010, the basis of this lawsuit.
She also answered some of the questions about her actions in 2007. Andrew’s lawyer deposed her for two hours. After further questioning about 2007, O’Brien’s lawyer terminated the deposition. Andrew had ample opportunity to depose O’Brien about the February 2010 statements. O’Brien’s deposition was adjourned after she was asked repetitive, harassing, hectoring, and irrelevant questions about 2007 statements and actions.[26]

Reasons for Judgment

O’Brien rightly contends that the trial court was not required to provide written reasons for judgment. The trial court judge explained his reasons in court for granting summary judgment; he did not have to provide |n additional written reasons.

Sanctions for Frivolous Appeal

O’Brien requests sanctions on account of what she deems to be a frivolous appeal.
ANALYSIS
We find nothing in this ugly record to cast doubt as to the rulings of the trial court. We appreciate the evenhanded, patient, and respectful manner exhibited by the trial court at the hearing, the judgment from which forms the basis of this appeal.
Under the facts evidenced herein, and considering the statutory and jurisprudential protections in favor of social workers, our de novo review convinces us that the trial court’s decisions in this case are entirely reasonable and clearly warranted.[27]
Andrew’s lawyer was afforded adequate discovery, and there is no genuine issue of material fact.
O’Brien displayed appropriate and courageous conduct as a clinical social worker. We applaud her concern for the child and appreciate her willingness to serve.
An appellate court may award damages for a frivolous appeal. La. C.C.P. art. 2164. This provision is penal in nature and is to be strictly construed. An appeal will not be deemed frivolous unless it is taken solely for delay, fails to raise a serious legal question, or counsel does not 11g.seriously believe in the proposition of law he is advancing. Appeals are favored and appellate courts are reluctant to impose damages for frivolous appeals. Straughter v. Hodnett, 42,827 (La.App.2d Cir.1/9/08), 975 So.2d 81, writ denied, 2008-0573 (La.5/2/08), 979 So.2d 1286.
This court has awarded attorney fees for a frivolous appeal even when a party has not appealed or answered an appeal:
Although an appeal or answer to the appeal is required for appellate review and modification of the trial court’s award of damages, the issue of frivolous appeal first arises at the appellate court level and therefore may be adjudicated and remedied by this court. The jurisprudence has also determined that when an issue of attorney’s fees is present in the case, it is within the appellate court’s discretion to award or increase attorney’s fees for the expense of the appeal regardless of whether the appellee an *476 swered the appeal. La. C.C.P. art. 2164; Gandy v. United Services Auto Assoc., 97-1095 (La.App.5th Cir.10/14/98), 721 So.2d 34; Smith v. Pilgrim’s Pride Corp., 44,080 (La.App.2d Cir.2/25/09), 4 So.3d 983, writ denied, 09-0961 (La.6/19/09), 10 So.3d 739.
Nesbitt v. Nesbitt, 46,514 (La.App.2d Cir.9/21/11), 79 So.3d 347.
This appeal is indeed frivolous and has certainly been handled in an unprofessional and unduly confrontational manner. Andrew and his attorney have made this litigation painful and venomous. The residual scorched-earth, aftermath has done nothing constructive.
We cannot ignore the reprehensible tactics and conduct of Andrew’s attorney in these proceedings. This was a frivolous and hurtful appeal. Accordingly, we assess $2,500 in attorney fees, and all costs, in solido, against Andrew and his lawyer.
DECREE
With legal fees of $2,500 and all costs of court assessed, in solido, | ^against Andrew Davisson and his attorney, Michael Cox,[28] the rulings of the trial court are AFFIRMED.

.We are operating somewhat in a vacuum in this appeal of SUIT THREE, as this appellate record only includes tiny fractions of, and marginal references to, SUITS ONE and TWO. Information from the two previous suits is particularly sketchy as to what actions were taken on particular dates. Both sides referred, in addition, to Bossier Parish criminal proceedings against Andrew. The alleged crimes involved drugs and firearms, and were disposed of by a guilty plea relative to the drugs, but apparently the admission of guilt was to a different charge other than those instituted by the District Attorney in January 2010.

. The child was five years old when the marriage ended; he is now 15, and his parents are still arguing.

. The State of Louisiana licensed O’Brien as a clinical social worker in 1994. She has been in continuous practice since that date.

. The terms of the original JCIP established that custody would rotate weekly between his parents.

. The custody litigation lies dormant in another suit record, before a different judge. The divorce/custody case was originally assigned to Judge Bruce M. Bolin. After Andrew’s lawyer notified Judge Bolin that he might be called as a witness in this defamation case, relative to his knowledge of the custody suit, the judge recused himself in this suit. The judge has now retired, and this record does not reflect which judge is now handling the custody litigation.

. He canceled several appointments over the following months and years, and refused to submit to drug screening, after having agreed to do so. In particular, Andrew was requested by O'Brien to come in twice in late 2009 and/or early 2010, after the request for a protective order (SUIT TWO) was filed against him. He again refused.

. We have scoured the record, particularly O'Brien’s letters of July 10 and September 10, 2007, and cannot detect any merit whatsoever in Andrew’s complaints about O'Brien’s conduct of her duties to the court and this sad family. Her communications were factual and each letter clearly demonstrates her concerns for the child. O’Brien’s conduct was not just competent; it was exemplary. From everything in this record, she did precisely what she was supposed to do.

.O’Brien wrote that Andrew was taking Zoloft, Xanax, and Sinemet. She was aware during these two sessions that Andrew has a permutation of Parkinson’s disease, but this information, to Andrew’s distress, was not included in her 2007 report to the court, in which she reported that O’Brien was very slow and lethargic in his affect and speech, that his unusual behavior was a sign of some kind of substance in his body, and that she was concerned he had a drug addiction. Andrew has refused to meet with O’Brien since the second session in June 2007.

. Androgel is a trade name for a type of testosterone, the safety and effectiveness of which is unknown as to usage on children under the age of 18. See www.androgel.com.

. Andrew has not had in-home visitation with his son for over two years. He has had only two total supervised visits since the restraining order was issued. Each visit was ordered to be supervised by O'Brien, at $100 per hour, which was apparently financially unsustainable due to Andrew's meager disability income.

. O’Brien denies the secretive nature of the sessions.

.La. Ch. C. art. 611, Immunity from civil or criminal liability, states:
A. (1) No cause of action shall exist against any:
(a) Person who in good faith makes a report, cooperates in any investigation arising as a result of such report, or participates in judicial proceedings authorized under the provisions of this Chapter.
(b) Caseworker who in good faith conducts an investigation, makes an investigative judgment or disposition, or releases or uses information contained in the central registry for the purpose of protecting a child. (2) Such individuals shall have immunity from civil or criminal liability that otherwise might be incurred or imposed.
*471 B. This immunity shall not be extended to:
(1) Any alleged principal, conspirator, or accessory to an offense involving the abuse or neglect of the child.
(2) Any person who makes a report known to be false or with reckless disregard for the truth of the report.
C. (1) In any action to establish damages against a defendant who has made a false report of child abuse or neglect, the plaintiff shall bear the burden of proving that the defendant who filed the false report of child abuse or neglect knew the report was false or that the report was filed with reckless disregard for the truth of the report. ’
(2) A plaintiff who fails to meet his burden of proof provided in Subparagraph (1) of this Paragraph shall pay all court costs and attorney fees of the defendant.

. O'Brien answered some questions about her actions in 2007 and many questions about her actions in February 2010. After making certain that Andrew’s counsel was finished asking about 2010, O’Brien's lawyer terminated the deposition, refusing to answer more questions about 2007. The extremely unpleasant and unnecessarily argumentative deposition was terminated by O’Brien’s lawyer after two hours. The transcript is painful to read. We find little to praise concerning Andrew’s attorney. His conduct of the deposition was childish, bullying, repetitive, disorganized, argumentative, threatening, and nonproductive.
O'Brien had made a compelling case that she observed the child's anxiety, fear, terror, and confusion, stemming from his father's fixation on guns, pornography, physical violence, and substance abuse. Andrew also lied about a particular doctor being the source of the Androgel he was administering to the child. The doctor in question denied prescribing Androgel for the child.
Fortunately, O’Brien had the courage to start in motion some protective measures for the child. She makes this point in her deposition: “This child was — in my opinion was giving me accurate information and my job was to report it.” She was entirely correct in doing so, and she was in no way deserving of the treatment she has suffered at the hands of Andrew’s lawyer. She had disturbing information from Lori, from the child, and from Lori’s new husband. Andrew and his mother had been in noncompliance for 2 ½ years before O’Brien reported the abuse in February of 2010.
Amazingly, on one hand, Andrew expresses outrage that his input wasn’t considered, but on the other hand, he refused to provide any input. He can't have it both ways. Here is the case in a nutshell, being part of an answer provided by O'Brien during her deposition: "Mr. Davisson didn't comply. Nor his mother. So the only information I had to go on was what was presented to me. The Court ordered me to make a report, to supervise the visitations and I complied.”

. Mr. Soileau: "Yeah. I’m making sure we're clear though. You did have the opportunity to ask her from January 2010 forward and you’re satisfied with your questions about that material?”
Mr. Cox: "Yes.”

. The trial court concluded that the immunity granted to licensed social workers under La. Ch. C. art. 611 exempted O’Brien from liability for the claims as stated in Andrew's petition.

. Andrew filed a motion for findings of fact and conclusion of law. His motion was denied, since the trial court quite thoroughly explained its ruling in court on the date of the hearing.

. O’Brien seeks attorney fees, sanctions, and all costs for Andrew’s frivolous appeal.

. O'Brien admitted in her deposition that her observations about Andrew largely came from information gleaned from the child, not from actually seeing Andrew abuse the child. In fact, Andrew never returned to see O’Brien after the two sessions in June 2007. It would seem to be relatively rare that a mental health professional would ever actually see the abuse firsthand. This argument of plaintiff is painfully shallow.

. Andrew’s position on the immunity issue includes:
• Immunity shields only those in good faith, and who do not make a statement known to be false or with reckless disregard for the truth. Good faith precludes making statements ’’known to be false” or with a "reckless disregard for the truth.” Kennedy v. Sheriff of East Baton Rouge, 2005-1418 (La.7/10/06), 935 So.2d 669.
• Good faith can be determined only after an inquiry into the facts. Whether O'Brien made the statements in good faith is a genuine issue of material fact.
• O'Brien was in bad faith when she made her statements to the court in an effort to paint him as a drug abuser who was unfit to have any contact with his son other than supervised visitation. She willfully concealed from the court that he had Parkinson's disease, which explained his signs of lethargy and slurred speech when she met with him. This omission misled the court to believe he was a drug abuser. She attributed his slurred speech to alcohol without having a basis for doing so.

.O’Brien had attached three letters or reports from 2007 to her motion for summary judgment. Andrew’s attorney asserts that even though the allegedly defamatory statements were made in 2010, any questions about the 2007 interview and report were *473 relevant as they related to her honesty and good faith. Accordingly, he argues that she was obligated to answer questions about these documents.

. La. Ch. C. art. 609. Mandatory and permitted reporting
A. With respect to mandatory reporters:
(1) Notwithstanding any claim of privileged communication, any mandatory reporter who has cause to believe that a child’s physical or mental health or welfare is endangered as a result of abuse or neglect or that abuse or neglect was a contributing factor in a child’s death shall report in accordance with Article 610.
(2) Violation of the duties imposed upon a mandatory reporter subjects the offender to criminal prosecution authorized by R.S. 14:403(A)(1).
B. With respect to permitted reporters, any other person having cause to believe that a child’s physical or mental health or welfare is endangered as a result of abuse or neglect, including a judge of any court of this state, may report in accordance with Article 610.
C. The filing of a report, known to be false, may subject the offender to criminal prosecution authorized by R.S. 14:403(A)(3).
La. R.S. 14:403. Abuse of children; reports; waiver of privilege
A.(l) Any person who, under Children’s Code Article 609(A), is required to report the abuse or neglect or sexual abuse of a child and knowingly and willfully fails to so report shall be guilty of a misdemeanor and upon conviction shall be fined not more than five hundred dollars or imprisoned for not more than six months, or both.
(2) Any person, any employee of a local child protection unit of the Department of Children and Family Services, any employee of any local law enforcement agency, any employee or agent of any state department, or any school employee who knowingly and willfully violates the provisions of Chapter 5 of Title VI of the Children’s Code, or who knowingly and willfully obstructs the procedures for receiving and investigating reports of child abuse or neglect or sexual abuse, or who discloses without authorization confidential information about or contained within such reports shall be guilty of a misdemeanor and upon conviction shall be fined not more than five hundred dollars or imprisoned for not more than six months, or both.
(3) Any person who reports a child as abused or neglected or sexually abused to the department or to any law enforcement agency, knowing that such information is false, shall be guilty of a misdemeanor and upon conviction shall be fined not more than five hundred dollars or imprisoned for not more than six months, or both.
B. In any proceeding concerning the abuse or neglect or sexual abuse of a child or the cause of such condition, evidence may not be excluded on any ground of privilege, except in the case of communications between an attorney and his client or between a priest, rabbi, duly ordained minister or Christian Science practitioner and his communicant.

. Kennedy v. Sheriff of East Baton Rouge, supra.

. We emphasize that, when child abuse is suspected, a mental health professional is required to take immediate action.

. The overriding concern here should be the best interest of the child. In view of Andrew’s limited resources, it would seem that any complaints about the mental health professional would be more productively referred to the trial court of the custody case, or to the licensing association for clinical social workers.

.Several other Louisiana cases have reached the same result. For instance, see Adams v. Harrah’s Bossier City Inv. Co., 41,-468 (La.App.2d Cir.1/10/07), 948 So.2d 317, writ denied, 2007-0639 (La.5/11/07), 955 So.2d 1281.

. The inquiry about 2007 was further inhibited by virtue of a flood at O’Brien’s former office, which destroyed much of her records about this case, in the fall of 2009.

. This lawsuit flies directly in the face of three articles and statutes that place reporting duties upon and provide legal protection for mental health professionals: La. R.S. 14:403 and La. Ch. C. arts. 609 and 611.

. Here is a small sampling of the many unprofessional comments in this record by attorney Cox, who himself appears to be the one doing the defaming:
• "Like I said, this case has become — I mean, it’s going to get nasty before it's all over. Excuse me, it’s a career case.”
• "And quite frankly, I’m concerned about the honesty of these people.”
• “But again, we have also discovered things that I haven't even been able to get into it with her, but we have CDs that she has given and I know what she knows and I know that she has misrepresented things, but....”
• "dishonest and professionally outrageous .... ”
• "perjured”
• "When O’Brien lied in her affidavit....”
• "She lied to this court[.]”
• "As a liar, she was and is dishonest.”
• "The adverb 'professionally' should not have been used to modify the adjective 'outrageous.' It tends to unwittingly create the implication that O'Brien’s outrageous actions were somehow professional. This is not the case. It was an error for the undersigned to create the incorrect illusion of professional conduct. The said conduct was not professional. Thanks are owed to opposing counsel for pointing out this error.”
• “In Andrew's case, O'Brien hated Andrew from the outset without cause, simply, because he was/is handicapped.”
• “This was a boldfaced lie and is demonstrative of her utter contempt for truth and due process.”